Centennial Laundry Company, an Illinois Corporation, Plaintiff-Appellee, v. West Side Organization, an Unincorporated Association, et al., Defendants-Appellants.

### Gen. No. 50,122.

First District, Second Division.

February 19, 1965.

Devoe, Shadur, Mikva & Plotkin, of Chicago (Abner J. Mikva and William Shlensky, of counsel), for appellants.

Robert S. Fiffer, Allan N. Lasky and Michael G. Chernoff, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is an interlocutory appeal to review an order granting a temporary injunction restraining defendants from picketing, calling for a boycott and demonstrating on or near plaintiff's premises for the purpose of compelling plaintiff to hire a specific number of negro route drivers and restraining defendants from other alleged unlawful activities.

The complaint was filed on November 12, 1964, and the defendants were served with process between 7:00 p. m. on November 12th and 7:45 a. m. on November 13th. At 10:00 a. m. on November 13th, counsel for the parties appeared on plaintiff's motion for a temporary injunction; the hearing was continued until 3:00 p. m. that afternoon for the purpose of affording defendants an opportunity to file a Petition for Removal to the United States District Court, which Petition was subsequently denied. The parties again appeared before the chancellor at 3:30 p. m., at which time appellants filed their verified answer to the complaint. The chancellor heard the arguments of counsel and the offer of proof made by appellants' counsel, and rejected appellants' requests to be heard on the matters in the complaint allegedly controverted by the answer. The injunction order issued at approximately 4:50 p. m., from which order the appellants appeal.

Plaintiff is an Illinois corporation engaged in the laundry and dry cleaning business, with its plant and retail outlet at 1417 and 1430 West Roosevelt Road in

Chicago. Defendant-appellant West Side Organization, hereinafter referred to as WSO, is a voluntary organization whose purpose is the furtherance of civic activities and employment opportunities for West Side residents. Its offices are located at 1527 West Roosevelt Road. The eight individual defendants-appellants are members of or advisors to WSO and none of them is or ever has been employed by plaintiff. Defendant Chicago Missionary Society is an Illinois not-for-profit corporation with offices in Chicago; the other individual defendants are either members, officers and/or employees of the Missionary Society.

The complaint alleged that on or about August 1, 1964, and continuing to date, the defendants and others formed and engaged in a conspiracy, combination and concerted action to establish a boycott and blacklist with the malicious intent to cause plaintiff to violate the terms of its collective bargaining agreement with the Teamsters Union; to discharge eight driver-salesmen of the white race, for the reason that they are white, in violation of the public policy and laws of the State of Illinois and the United States; to fill the vacancies so created by hiring eight negro drivers; and to abandon its publicly expressed policy of non-discrimination in its employment practices. All of this was specifically denied by appellants in their answer. The complaint further alleged that in pursuance of the aforementioned combination, conspiracy and concerted action and to intimidate and coerce plaintiff to act as demanded, the defendants caused, procured and committed the following acts: (a) on or about October 8, 1964, defendants commenced a program of daily picketing on the public sidewalk in front of plaintiff's premises, which picketing interfered with access to plaintiff's premises; appellants admitted to intermittent picketing but denied daily picketing and denied that the picketing which was being carried

409

out interfered with the access to plaintiff's establishment; (b) on or about October 8, 1964, defendants commenced a program of issuing, distributing and posting circulars and other handbills urging the public and plaintiff's patrons to boycott plaintiff's establishment; appellants admitted the circulation of the handbills, but alleged that the program of distribution began on or about August 17, 1964, and that plaintiff was aware of the program of distribution at that time; (c) on or about October 8, 1964, defendants commenced a program of creating, fostering and organizing demonstrations and disorders on the public sidewalk in front of plaintiff's establishment in order to discourage patronization of plaintiff's business; appellants denied they created, fostered or organized any disorders in the area and further alleged the intermittent picketing was being carried out for the purpose of informing the public of plaintiff's discriminatory hiring practices; and (d) on or about October 8, 1964, defendants commenced a program to incite the community wherein plaintiff is located to create an atmosphere of lawlessness and disorder and to destroy the good will of plaintiff in the community; appellants denied these allegations. As a direct and proximate result of defendants' activities plaintiff alleged it was being coerced into violating its collective bargaining agreement, which appellants denied; that the activities of defendants caused and will continue to cause plaintiff to suffer financial injury, of which appellants claimed insufficient knowledge and demanded strict proof; that since October 30, 1964, plaintiff's secretary received telephone calls and documents threatening his life, of which appellants claimed insufficient knowledge and demanded strict proof; that since October 8, 1964, an atmosphere of lawlessness and disorder has existed in the community so that plaintiff fears for the safety of its employees and its

410

property, which appellants denied; and that since November 10, 1964, substantial damage has occurred to the plaintiff's employees' automobiles parked on plaintiff's premises, of which appellants claimed insufficient knowledge and demanded strict proof. Finally, the complaint alleged defendants, in furtherance of the acts thereinbefore alleged, were planning a demonstration against plaintiff on November 14, 1964, to be held near plaintiff's premises, which appellants admitted but which they alleged to be for the purpose of informing the public of plaintiff's discriminatory hiring practices; that the defendants will continue to cause, procure and commit the acts complained of in the complaint to the irreparable damage and detriment of plaintiff, which appellants denied; and that the full extent of the damage which plaintiff has and will suffer as a consequence of defendants' unlawful conduct is incapable of ascertainment and is irreparable, which appellants denied. Attached to the complaint were six handbills circulated by defendants between October 13 and November 7, 1964, two of which called for the employment of eight negro drivers. A seventh circular, dated November 11, 1964, was a call to a public rally to be held on November 14th at Washburn and Loomis Streets, a block from plaintiff's premises, the purpose of which was to "tell the community about how the boycott of Centennial is going; disprove the lies that Centennial is spreading about WSO; tell you what you can do to fight Jim Crow Centennial."

At the 3:30 p. m. hearing on November 13th, plaintiff's position in support of the temporary injunction was that the picketing, demonstrating and boycotting being practiced and called for by defendants were for an unlawful purpose, namely, that plaintiff hire a quota of negro route drivers as evidenced by the handbills of October 13 and October 19, 1964, and further that these unlawful demands were to be the subject

411

of the public rally to be held on the day following the hearing on the motion for the injunction. Appellants' counsel repeatedly denied that defendants' request for eight negro drivers was a request for a quota and made an offer of proof to the effect that the number "eight" was arrived at when defendants made a survey of plaintiff's routes after plaintiff expressed fear of losing business in white neighborhoods by employing negro drivers on those routes. Appellants further argued that, in any event, even if the request did constitute a demand for a quota, this request was no longer being made by defendants because a solution to the problem was being attempted through negotiations by the Chicago Commission on Human Relations. Appellants' counsel stated that the Commission submitted a written proposal which was accepted by both sides of the controversy but which plaintiff later rejected. It was further offered that defendants were no longer requesting the hiring of eight negro drivers, but only that plaintiff discontinue its decriminatory hiring practices. Appellants also denied any violence was connected with their activities. Appellants were present in court at the time of the hearing on the motion for the temporary injunction and repeatedly offered to give evidence to substantiate the denials made in their answer, which requests were rejected by the chancellor. Before the injunction was issued, appellants also offered to suspend all picketing pending a complete hearing on the matter, which was also rejected.

The injunction order, which recited that testimony had been heard on the plaintiff's motion, restrained defendants from (a) picketing at or near plaintiff's premises, (b) issuing, distributing and posting circulars and other handbills to the public in general and the patrons of plaintiff in particular, urging such persons not to patronize plaintiff, (c) creating, foster-

412

ing and organizing demonstrations at or near plaintiff's premises, (d) engaging in any other conduct for the purpose of coercing, compelling or inducing persons who might otherwise lawfully transact business with plaintiff, (e) compelling, forcing and inducing plaintiff to violate and breach the obligations and terms of its collective bargaining contract, (f) coercing, compelling and forcing plaintiff to engage in racially discriminatory practices in violation of the public policy and laws of the State of Illinois and the United States, (g) threatening the lives and well-being of the officers, directors and employees of plaintiff, (h) committing any other acts or engaging in any other conduct to damage or destroy the property of plaintiff or its employees, and (i) boycotting, blacklisting or picketing plaintiff, or engaging in any other conduct to interfere with the business operations of plaintiff for the purpose of coercing, compelling or forcing plaintiff to discharge present employees and to employ negroes.

Appellants maintain the injunction should not have been issued for the reason that the material allegations of the complaint had been denied in their verified answer, especially as to the matters of unlawful purpose, violence, irreparable damage and continuing acts, and for the further reason that they pleaded affirmatively their activities were for the purpose of informing the public of plaintiff's discriminatory hiring practices. Plaintiff, on the other hand, contends that, on the basis of certain admissions made by appellants in their answer of matters contained in the complaint, of the handbills circulated by defendants calling for a quota, and of the circular of November 11, 1964, calling for a public rally on the 14th of November, the chancellor properly exercised his discretion in granting the temporary injunction. Plaintiff's theory is based on the premise that the pleadings themselves

show defendants were engaged in unlawful activities and in activities in furtherance of an unlawful purpose and that the answer raised no material issues of fact which necessitated a hearing.

Plaintiff was required to establish, as a prerequisite to obtaining the temporary injunction, the probability of ultimate success on the merits of the case, Lipkin v. Burnstine, 18 Ill App2d 509, 152 NE 2d 745, as well as the immediate necessity of an injunction to preserve the status quo and prevent irreparable harm of its rights. O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446. Where no answer has been filed, a temporary injunction may be issued based solely on the sufficiency of the complaint; but where an answer has been filed, both the answer and the complaint must be considered, Moss v. Balch, 320 Ill App 135, 49 NE2d 801, and if the answer contains denials of material allegations of the complaint, a hearing on those matters must be allowed before the injunction may issue. Lipkin v. Burnstine, 18 Ill App2d 509, 152 NE2d 745.

Appellants' answer denied the material allegations of the complaint: the unlawful purpose, the coercion of plaintiff to violate its collective bargaining agreement, the irreparable harm to plaintiff, the lawlessness and violence, and the continuance of the activities in question. More specifically, appellants stated in their offer of proof that the demand for eight route drivers, made in the handbills which were circulated three and four weeks prior to the filing of the complaint, was no longer being made by them and that the matter had been taken up by the Chicago Commission on Human Relations in an effort to arrive at a suitable solution. Appellants further affirmatively alleged that their purpose in engaging in the activities was to inform the public of plaintiff's discriminatory hiring practices. Plaintiff filed no reply to

414

appellants' answer. Not only did the entire thrust of plaintiff's case go to the alleged unlawful purpose of defendants, which was met by denials, but the fact that plaintiff waited some three and one-half months since the activities commenced and some three weeks since the last demand for eight drivers before filing this complaint raises a question as to plaintiff's need for immediate relief via a temporary injunction. It is also of interest to note at this point that appellants' attorney offered to suspend all picketing pending a full hearing on the motion for a preliminary injunction. The chancellor could no more conclude in favor of plaintiff than he could in favor of defendants, based on the pleadings before him.

██ The cases relied upon by plaintiff in support of its argument relating to picketing for an unlawful purpose are inapposite here for the reason that in each of those cases the court found the picketing was in fact being carried out for an unlawful purpose. Here, on the contrary, no such finding could have been made from the pleadings before the chancellor. While it is true, as plaintiff suggests, that the chancellor has broad discretion in determining whether or not an interlocutory order is necessary to maintain the status quo and preserve the equitable rights of the parties, this discretion does not extend to granting an injunction without a hearing in cases where all the material allegations of the complaint have been put in issue by the answer and the necessity of immediate relief is not apparent.

Plaintiff maintains that no reply to appellants' answer was necessary for the reason that no material issue of fact was raised by the answer, or, in the alternative, plaintiff was precluded from filing a reply due to the shortage of time. What has been said above disposes of the first alternative. Further, the admissions referred to by plaintiff relate merely to such

matters as plaintiff's location, its collective bargaining contract, the law and public policy of Illinois, plaintiff's financial investments, defendants' picketing and distribution of handbills, and the public demonstration scheduled for the 14th of November. The admission made by appellants, to the effect that the November 14th rally was planned in furtherance of the acts alleged in the complaint, does not admit defendants were still demanding eight drivers, does not admit violence, and does not admit coercion on plaintiff to breach its collective bargaining contract, all of which allegations had theretofore been specifically denied. These admissions could in no way form the basis upon which the injunction could be predicated, in the light of the denials made by appellants in their answer.

As to the second alternative, plaintiff cannot be heard to complaint of a shortage of time since it allowed defendants' activities to continue for some three and one-half months before the filing of the complaint; further, its was plaintiff who pressed the matter of the hearing on its motion for the temporary injunction.

 In the event a hearing is allowed and the facts found in favor of plaintiff on the motion for a temporary injunction, the scope of the injunction as issued below must be considered. If plaintiff is entitled to relief, it is entitled thereto only insofar as the relief relates to the unlawful acts and/or purposes of defendants, which may or may not include all the acts of defendants. Baker v. Retail Clerks' International Protective Ass'n, 313 Ill App 432, 40 NE2d 571. The injunction could restrain only the demand for the quota and activities leading to violence. Activities of defendants which are not unlawful of themselves or undertaken for unlawful purposes or which do not lead to violence cannot be enjoined. Ellingsen v. Milk Wagon Drivers' Union, 377 Ill 76, 35 NE2d 349. Further, the terms of the injunction must be specific and

clear so that defendants may know exactly what they are restrained from doing. Evans v. Johnston, 300 Ill App 78, 20 NE2d 841. The injunction issued below is too broad under the circumstances of the case. It prohibits picketing for any purpose; creating demonstrations for any purpose; boycotting for any purpose. Further, it is unclear how far from plaintiff's premises defendants must carry on their activities in order to keep from violating the injunction. It is well recognized that an injunction may not issue against peaceful picketing, where the purpose of the picketing is not contrary to a valid law or public policy of the State.

For these reasons the order is reversed.

Order reversed.

BRYANT and LYONS, JJ., concur.