(No. 39264.—

CENTENNIAL LAUNDRY COMPANY, Appellant, *vs.* WEST SIDE ORGANIZATION *et al.*, Appellees.

*Opinion filed March 24, 1966.*

Robert S. Fiffer and Allan N. Lasky, both of Chicago, for appellant.

Devoe, Shadur, Mikva & Plotkin, of Chicago, (Abner J. Mikva and Neil H. Adelman, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

This case concerns the propriety of the issuance of a temporary injunction by the circuit court of Cook County. The injunction was sought by the plaintiff, Centennial Laundry Company, to restrain picketing, distribution of pamphlets and the organization of demonstrations with respect to its employment practices. The defendants are the West Side Organization, an unincorporated association,

certain individuals named as its agents, employees and representatives, and Chicago Missionary Society, an unincorporated association, and certain individuals named as its officers or employees. The trial court issued a temporary injunction. Upon the defendants' appeal the appellate court reversed, (55 Ill. App. 2d 406,) and we allowed leave to appeal.

Plaintiffs filed their verified complaint on November 12, 1964. Process was served that evening and early the following morning, and a hearing was set for 10:00 A.M. on November 13. The case was removed to the federal court, but was at once remanded, and the application for a temporary injunction came on for hearing at 3:00 P.M. on November 13. At that time the defendants filed their verified answer. The chancellor heard arguments of counsel, but refused to hear testimony as to allegations of the complaint which were denied in the answer. The injunction order was issued on the pleadings at about 4:50 P.M. on November 13.

The complaint alleged that on or about August 1, 1964, and continuing to the date of the filing of the complaint, the defendants and others unknown to the plaintiff maliciously conspired to boycott and blacklist the plaintiff in order to cause it to violate its union collective bargaining contract and to discharge eight white driver-salesmen because of their race and replace them with eight negroes designated by the defendants. "In pursuance of said unlawful combination, conspiracy and concerted action as aforesaid and * * * in furtherance of the unlawful objects and purposes thereof" the defendants on or about October 8, 1964, commenced a program of daily picketing in front of plaintiff's premises, distributed and posted handbills urging patrons and the public to boycott the plaintiff, fostered and organized demonstrations and disorder in front of the plaintiff's business establishment and commenced a program to incite the members of the community to create an atmosphere of lawlessness and disorder in front of

plaintiff's establishment and to destroy plaintiff's good will. The defendant's verified answer admitted the picketing, leaflet distribution and demonstrations, but denied that their purpose was to injure plaintiff or to force it to hire a quota of negroes or to violate its collective bargaining contract, and on the contrary alleged that the picketing had been peaceful and that its purpose was to inform the public of the plaintiff's discriminatory hiring practices.

The complaint alleged that since October 30, threatening phone calls and documents had been received by the plaintiff's secretary, that on November 10, automobiles of its employees had been damaged and that since October 8, an atmosphere of lawlessness and disorder had been created which caused the plaintiff to fear for the safety of its employees. The answer either specifically denied all these allegations, or denied sufficient information to form a belief as to their truth, and demanded strict proof.

The plaintiff also alleged that the defendants were planning a demonstration near plaintiff's premises on November 14, 1964, "in furtherance of the acts hereinbefore alleged." Defendants admitted the planned demonstration but alleged that its purpose was to inform the public of plaintiff's discriminatory hiring practices. Attached to the complaint were six handbills distributed by the defendants between October 13 and November 7, 1964, two of which, dated October 13 and October 19, 1964, urged the employment of eight negro route drivers. Subsequent circulars generally demanded "more negro routedrivers", but mentioned no specific number. A circular dated November 11, 1964, evidently the precipitating cause of this case, announced that a "WSO Public Rally" would be held a block from plaintiff's premises on Saturday, November 14, to "tell the community about how the boycott of Centennial is going", "disprove the lies that Centennial is spreading about WSO" and "tell you what you can do to fight Jim Crow Centennial."

The plaintiff's contention at the hearing on the preliminary injunction, as in this court, was that the activity of the defendants in picketing, distributing handbills, boycotting and otherwise "coercing" plaintiff was for the unlawful purpose of demanding that plaintiff hire a "quota" of eight negroes, and further that this demand was to be the subject of a demonstration on November 14. There seems to be no question that such a demand would be contrary to the policy expressed in the laws of this state, (see Ill. Rev. Stat. 1963, chap. 48, par. 851), and of the United States, (see 42 U.S.C.A. sec. 2000e-2(a) (1964),) and that picketing in furtherance of that demand would be the proper subject of injunctive relief. *Giboney* v. *Empire Storage and Ice Co.* 336 U.S. 490 (1949), 93 L. Ed. 834.

In a leaflet distributed on October 13, the defendant West Side Organization demanded the hiring of eight negro drivers, and another leaflet distributed on October 19, said, "We think that Centennial should hire at least 8 negro drivers." Subsequent leaflets referred to "more negro routemen" but did not mention a specific number. At the hearing the defendants sought to offer evidence to prove that the figure eight was arrived at after a survey of plaintiff's routes was made, in order to dispel plaintiff's asserted fear that it would lose business in white neighborhoods if it employed negro drivers on those routes. They also offered evidence to prove that even if the references to eight negro drivers in the October 13 and 19 leaflets should be construed as a demand for a quota, they had ceased to make it before the complaint was filed on November 13, 1964, and were only urging that plaintiff cease its allegedly discriminatory hiring practices. During the hearing, counsel for the defendants repeatedly offered the testimony of witnesses present in the courtroom to prove the denials made in their answer, but the chancellor denied these requests. Before the injunction was issued, the defendants also offered to cease all picketing pending a full hearing.

We turn first to a consideration of the propriety of the chancellor's issuance of a temporary injunction on the basis of the complaint, despite the denials of a verified answer, and without hearing the testimony of available witnesses upon the disputed issues. The appellate court summarized the legal doctrines bearing upon this question in these terms: "Plaintiff was required to establish, as a prerequisite to obtaining the temporary injunction, the probability of ultimate success on the merits of the case, *Lipkin* v. *Burnstine,* 18 Ill. App. 2d 509, as well as the immediate necessity of an injunction to preserve the *status quo* and prevent irreparable harm of [to] its rights. *O'Brien* v. *Matual,* 14 Ill. App. 2d 173. Where no answer has been filed, a temporary injunction may be issued based solely on the sufficiency of the complaint; but where an answer has been filed, both the answer and the complaint must be considered, *Moss* v. *Balch,* 320 Ill. App. 135, and if the answer contains denials of material allegations of the complaint, a hearing on those matters must be allowed before the injunction may issue. *Lipkin* v. *Burnstine,* 18 Ill. App. 2d 509." 55 Ill. App. 2d at 414.

Applying these principles to this case, the appellate court stated: "Appellants' answer denied the material allegations of the complaint: the unlawful purpose, the coercion of plaintiff to violate its collective bargaining agreement, the irreparable harm to plaintiff, the lawlessness and violence, and the continuance of the activities in question. More specifically, appellants stated in their offer of proof that the demand for eight route drivers, made in the handbills which were circulated three and four weeks prior to the filing of the complaint, was no longer being made by them and that the matter had been taken up by the Chicago Commission on Human Relations in an effort to arrive at a suitable solution. Appellants further affirmatively alleged that their purpose in engaging in the activities was to inform the public of plaintiff's discriminatory hiring practices. Plaintiff

filed no reply to appellants' answer. Not only did the entire thrust of plaintiff's case go to the alleged unlawful purpose of defendants, which was met by denials but the fact that plaintiff waited some three and one-half months since the activities commenced and some three weeks since the last demand for eight drivers before filing this complaint raises a question as to plaintiff's need for immediate relief via a temporary injunction. It is also of interest to note at this point that appellants' attorney offered to suspend all picketing pending a full hearing on the motion for a preliminary injunction. The chancellor could no more conclude in favor of plaintiff than he could in favor of defendants, based on the pleadings before him."

The plaintiff contends that the appellate court erred because the defendants admitted enough of the allegations of the complaint to warrant the issuance of a temporary injunction without a hearing. The defendants admitted that they had distributed two leaflets demanding the hiring of eight negro route drivers but the most recent of these leaflets was over three weeks old. The defendants specifically denied any improper purpose behind the distribution campaign, and they offered the testimony of witnesses in support of that denial. The plaintiff also relies upon the fact that the defendants admitted the allegation that they were planning a demonstration "in furtherance of the acts" alleged in the complaint. But the defendants' allegation that "this demonstration is for the purpose of informing the public of the nature of the discriminatory hiring policy of plaintiffs" clearly presented the issue of purpose to the chancellor.

The fact that pamphlets issued in the recent past indicated an improper purpose is material insofar as past purpose supports an inference as to present purpose. But that inference alone does not warrant the issuance of a temporary injunction restraining the type of conduct involved here, when any improper purpose was expressly denied, three

weeks had passed since the act giving rise to the inference, and an offer of immediate contradictory proof was made.

We agree with the appellate court that the trial court should not have issued a temporary injunction in this case without hearing testimony on the disputed issue of purpose. (*Madison Chemical Corp.* v. *Resnick,* 35 Ill. App. 2d 372 (1962); *Lipkin* v. *Burnstine,* 18 Ill. App. 2d 509 (1958); *Bardwick Agency, Inc.* v. *Hale,* 32 Ill. App. 2d 75 (1961).) A satisfactory hearing on that issue was especially important on the facts of this case. If the purpose of the defendants' activity was to force the plaintiff to hire a "quota" of negro drivers, then the Illinois Fair Employment Practices Act, (Ill. Rev. Stat. 1963, chap. 48, pars. 851-66,) and the federal Civil Rights Act, (42 U.S.C.A. sec. 2000e-2(a) (1964),) would be violated, and injunctive relief would be proper. (See *Giboney* v. *Empire Storage and Ice Co.* 336 U.S. 490 (1949).) But if the defendants' purpose was, as they alleged in their answer, to protest the plaintiff's allegedly discriminatory hiring practices, their peaceful conduct was actively sponsored by that same legislation, and seemingly protected under the first amendment to the United States constitution as well. (See *Hughes* v. *Superior Court of California,* 339 U.S. 460 (1950) 94 L. Ed. 985; *International Brotherhood of Teamsters* v. *Vogt,* 354 U.S. 284 (1957) 1 L. Ed. 2d 1347; *Cox* v. *Louisiana,* 379 U.S. 536, 13 L. ed. 2d 471, 85 S. Ct. 453 (1965); *Edwards* v. *South Carolina,* 372 U.S. 229 (1963), 9 L. Ed. 2d 697, 83 S. Ct. 680.) We agree with the appellate court that "The chancellor could no more conclude in favor of plaintiff than he could in favor of defendants, based on the pleadings before him."

The plaintiff has relied heavily upon the decision of the appellate court in *Austin Congress Corp.* v. *Mannina,* 46 Ill. App. 2d 192, which was decided in 1964 by the same appellate court that decided this case. There the defendants picketed the plaintiff's new nursing home carrying signs

which read, "Building Code Violated—Safety Impaired". The Building Code required that partitions in a building of that type "be of noncombustible construction providing heat resistance of not less than one hour * * *." A dispute had existed between the defendants and the Building Commissioner as to whether this provision was satisfied by a material that had the specified heat resistant qualities, or whether the Code imposed an additional requirement of noncombustibility. The trial court granted a temporary injunction restraining the picketing after hearing the testimony of the Building Commissioner that he had approved the materials used in the construction of the plaintiff's building, but without hearing testimony offered to support the defendants' theory of an independent requirement of noncombustibility. The court heard enough evidence to show that the defendants' interpretation of the Municipal Code was at variance with that of the responsible city officials. Upon that showing, and taking into account the great harm to the plaintiff and the relative remoteness of the interest of the defendants, the trial court deferred until the hearing on the merits a final determination of the factual issue of combustibility, which could become significant only if the defendants' interpretation of the ordinance should be sustained. In the case before us, however, as the appellate court stated, the entire thrust of the plaintiff's case went to the alleged unlawful purpose of the defendants' conduct. That purpose was squarely denied, but the trial court issued the temporary injunction without hearing evidence. For this reason the issuance of the temporary injunction was improper.

The injunction which was issued was so broad and indefinite in its terms as to be improper upon equitable principles, and invalid upon constitutional grounds. Among other things, it prohibited the defendants from "Picketing at or near Centennial Laundry Company;" "Issuing, distributing and posting circulars and other hand bills to the

public in general and patrons of the Centennial Laundry Company in particular, urging such persons not to patronize Centennial Laundry Company;" and "Creating, fostering and organizing demonstrations at or near Centennial Laundry Company, located at 1417 and 1430 West Roosevelt Road, Chicago, Illinois." These blanket prohibitions are unrelated to the purpose for which the picketing, distribution of literature or demonstrating might be conducted, and they are so sweeping and imprecise as to offend constitutional guarantees of freedom of speech, press and assembly. See *Thornhill* v. *Alabama,* 310 U.S. 88 (1940) 84 L. Ed. 1093; *Ellingsen* v. *Milk Wagon Drivers' Union,* 377 Ill. 76, 87 (1941); *cf. Cox* v. *Louisiana,* 379 U.S. 536 (1965); *Edwards* v. *South Carolina,* 372 U.S. 229 (1963); *International Brotherhood of Teamsters* v. *Vogt,* 354 U.S. 284 (1957); *Hughes* v. *Superior Court,* 339 U.S. 460 (1949); *Cantwell* v. *Connecticut,* 310 U.S. 296 (1940), 84 L. Ed. 1213.

We hold, therefore, that the temporary injunction was improperly issued, and the judgment of the appellate court is affirmed.

*Judgment affirmed.*