Raymond G. Jacobs, et al. and Riviera Lanes, Inc., a Corporation, Plaintiffs-Appellees, v. Gust Regas, et al., Defendants, Gust Regas, et al., Defendants-Appellants.

Gen. No. 51,108.

First District, Second Division.

September 27, 1966.

Rehearing denied October 18, 1966.

LYONS, J., dissenting.

L. Louis Karton, of Chicago, for appellants.

Guerine & Guerine, of Melrose Park (Guy C. Guerine, of counsel), for appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an interlocutory appeal from an order entered in the Circuit Court of Cook County, December 29, 1965, granting the issuance of a temporary injunction against defendants, restraining them from exercising authority as officers and directors of Riviera Lanes, Inc., from holding a stockholders' meeting, and from voting the stock previously owned by Otto and Walter Goldammer.

The gravamen of plaintiffs' complaint is that defendants violated an agreement between plaintiffs and defendants whereby Gust and Spiros Regas agreed to purchase, on behalf of the corporation, the Goldammer stock and interest in a trust which holds title to the corporate real estate. Upon completion of a loan with the Melrose Park National Bank, defendants were to be reimbursed for the money they had spent to buy out the Goldammers, and the defendants in turn were to have turned over the stock to the corporation for cancellation. Instead, it is alleged, that defendant Gust Regas, without authority received the proceeds of the loan and disbursed same to the shareholders in the proportion to their holdings in the corporation and kept the Goldammer stock for himself and his brother, for the purpose of obtaining control of the corporation and to

284

oust plaintiffs from their positions as officers, directors and employees.

■ In an application for a temporary injunction it is unnecessary for the plaintiff to make out a case that would entitle him at all events to an injunction at the final hearing. Plaintiff was required only to establish by a clear preponderance of the evidence that ultimate success is probable. Initially this is a decision for the sound discretion of the Chancellor. His exercise of that discretion will not be overturned, absent a clear showing of abuse. With all due respect for the Chancellor who spent two days hearing this matter, this is a case where the Chancellor erred in granting a temporary injunction.

The plaintiffs failed to prove the existence of the agreement on which their prayer for a temporary injunction rested. There are no corporate minutes of the alleged transaction. Not one of the plaintiffs proved any official action of the corporation that would have bound the corporation to buy this stock. Nor is there a shred of evidence as to how the stockholders of the corporation were going to get the proceeds of a loan made by the Trust, when holders of beneficial interests in the Trust and stockholders in the corporation were not wholly identical parties.

Plaintiffs relied on the testimony of Mr. Wobith, Vice-President of the Melrose Park National Bank, that the loan from the bank was to be used to pay off a first mortgage and to reimburse Gust Regas for money spent to obtain the Goldammer stock for the corporation. This testimony is controverted by the fact that at the time of the alleged agreement there was no Goldammer interest to buy. That interest had already been sold to Louis Carras, son-in-law of Spiros Regas, and the stock had been transferred on the corporate books and the new certificates evidencing ownership of the shares signed by Raymond G. Jacobs in his capacity as an of-

ficer of the corporation, one of the plaintiffs in this action.

As plaintiffs-appellees state the proposition, a trial court has the power and discretion to issue a temporary injunction when there is an emergency, or danger of irreparable damages for the purpose of preserving the status quo. The issuance of the injunction in this case did not preserve the status quo, but rather disturbed the status quo. The sale of the Goldammer stock in August was a completed transaction.

Plaintiffs likewise failed to prove either the existence of an emergency or the threat of irreparable damage. Plaintiffs delayed fifteen months from the sale of the Goldammers' stock and eight months from the filing of the complaint before moving a second time for a temporary injunction. In Centennial Laundry v. West Side Organization, 34 Ill2d 257, 215 NE2d 443 (1966) the Illinois Supreme Court noted that a delay of only some three and one-half months raised a question as to plaintiff's need for immediate relief via a temporary injunction. Here the wait was much longer and with less excuse than in the above case.

Nor did plaintiffs show any danger of irreparable damage such as would entitle them to a temporary injunction. In fact, plaintiffs failed to show that defendants acquired the power to threaten plaintiffs' position by the acquisition of the Goldammer interest. Such power was acquired only with the subsequent purchase of the stock of Walter Koziol. The only threat alleged in the complaint is that the defendants Gust and Spiros Regas threatened to use the Goldammer shares for the purpose of electing officers and directors, and to raise the number of directors from four to five so as to deprive plaintiffs of their positions as directors, officers and employees. The fact that the plaintiffs apprehend that some wrong or illegal act will be done is not sufficient to cause the issuance of a temporary injunction.

Biggs v. City of Chicago, 348 Ill App 551, 109 NE2d 378; Union Drain. Dist. v. Manteno Limestone Co., 341 Ill App 353, 93 NE2d 500.

■ Finally, plaintiffs' claim of fraud is not well taken. It is not the law that a majority shareholder is a fiduciary. And, in fact, defendants were not controlling shareholders until they bought the Koziol stock.

■ Secondly, there could be no reliance on the defendants as Raymond G. Jacobs knew that the Goldammer stock had been sold in August, 1964, to Louis Carras, and that the proceeds of the new loan were for the retirement of the amount due on the first mortgage with the balance to be distributed by the Trustee to the holders of the beneficial interests in the trust. The corporation is a separate entity from the trust, and while the membership in the two entities was overlapping it was not wholly so. For this reason the stockholders of the corporation could not receive or be entitled to receive, as stockholders, any part of the proceeds of the new loan. The Trustee of the land trust acted accordingly when it distributed the proceeds to the beneficiaries of the trust.

For these reasons the order granting the temporary injunction is reversed.

Order reversed.

BURKE, J., concurs.

LYONS, J., dissenting:
I cannot concur in the result reached by the majority. The Chancellor saw and heard nine witnesses and examined forty-six exhibits over a period of two days and this court should not substitute its judgment as to the issues of fact decided by him.

I disagree with the majority that plaintiffs failed to prove the existence of an agreement. The fact that

287

there were no corporate minutes of the alleged transaction should not be detrimental to plaintiffs' cause of action in that the corporate records were within the complete control of defendants. The majority's assertion that plaintiffs failed to prove official action by the corporation binding the corporation to buy stock is likewise in error in that notice of a meeting was sent out in July and the purpose of said meeting, set out in the notice, was to discuss the sale and retirement of the Goldammer stock. The testimony of Mr. Wobith, a disinterested witness, unequivocally shows that one of the purposes of the loan from the bank was to obtain money to retire the Goldammer stock. The majority is in error in stating that because there was no Goldammer interest to buy, the impact of Wobith's testimony was diminished. It is true that the interest was sold to Louis Carras, but Carras held the stock only one day and then transferred it to his father-in-law, Spiros Regas, one of the defendants.

I likewise disagree with the majority that plaintiffs failed to prove (1) that the issuance of an injunction would preserve the status quo and (2) that an emergency or threat of irreparable damage existed. First of all, the issuance of an injunction would insure that the number of directors remain unchanged and that the existing officers remain in their positions. Secondly, an emergency was shown to exist in that the transfer of the Goldammer stock would shift complete control of the corporation to defendants. Plaintiffs acted immediately upon receiving notice of a meeting, whereby stock in the corporation was to be transferred. Finally, a threat of irreparable damage was shown to be imminent in that defendants threatened to use the Goldammer shares for the purpose of electing officers and directors and to raise the number of directors from four to five so as to deprive the plaintiffs of their position as directors, officers and employers.

I disagree with the majority's position that plaintiffs had to establish the elements of fraud in order to obtain a temporary injunction. Plaintiffs only had to establish that an agreement existed between the parties, and that defendants were engaged in a conspiracy in an attempt to breach that agreement. The Chancellor found that an agreement existed and that the breach of said agreement would result in irreparable harm to plaintiffs. He further found evidence of a conspiracy among defendants. It was not an abuse of the Chancellor's discretion for him to issue a temporary injunction.