(No. 40332.—

Raymond G. Jacobs *et al.*, Appellants, *vs.* Gust Regas *et al.*, Appellees.

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

GUERINE & GUERINE, of Melrose Park, (GUY C. GUE-RINE, of counsel,) for appellants.

L. LOUIS KARTON, of Chicago, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

On December 29, 1965, the circuit court of Cook County ordered a temporary injunction to issue restraining defendants, Gust Regas and Spiros Regas, from voting, selling, assigning or pledging the stock in Riviera Lanes, Inc. and the beneficial interest of a land trust formerly owned by Otto Goldammer and Walter Goldammer. The appellate court reversed this order granting the temporary injunction. (75 Ill. App. 2d 283.) We have granted plaintiffs leave to appeal.

Riviera Lanes, Inc., is a corporation engaged in the operation of a bowling alley, cocktail lounge, restaurant and meeting rooms in Melrose Park. Title to the real estate upon which the business is conducted is held in trust and the corporation rents the premises from Pioneer Trust and Savings Bank, the trustee. While holders of stock in the corporation and beneficial interests in the trust are not identical, those persons who own the controlling interest in the corporation also own the controlling interest in the trust.

From the time the business was incorporated and the trust was created until this controversy arose in January, 1965, the stock in the corporation and the beneficial interests in the trust were held in such proportion that neither the plaintiffs nor defendants had control of the corporation or trust. The board of directors of the corporation was composed of two of the plaintiffs and two of the defendants.

In early August, 1964, Walter Goldammer and Otto Goldammer decided to sell their 15 shares of stock in the corporation and 15% interest in the trust. According to

plaintiffs, they and the defendants agreed to purchase the Goldammer interests and retire them. In order to finance the purchase of these interests, it was agreed among the parties that they would have the trust borrow the money. In order to expedite the purchase the defendants agreed that they would advance the money to the Goldammers and hold these interests until the loan was completed by the trustee, at which time they would surrender the Goldammer interests to the plaintiffs and defendants and these interests would be cancelled. The defendants deny that such an agreement was made.

Louis Carras, son-in-law of defendant Spiros Regas, acquired title to the Goldammer interests on August 20, 1964, with money furnished by his father-in-law. The next day he transferred these interests, and defendants, Spiros Regas and Gust Regas, became the holders of these interests. On January 22, 1965, the loan was completed with the Melrose Park National Bank and a check for the proceeds of the loan was delivered to Gust Regas. He, in turn, delivered the check to the trustee bank. The trustee thereafter issued cashier's checks to the beneficiaries of the trust in proportion to their respective interests in the trust. The plaintiffs refused to cash these checks and demanded that defendants reimburse themselves from the proceeds of the loan for money advanced to purchase the Goldammer interests and have those interests cancelled.

Defendants by holding these interests, and interests later acquired from Walter Koziol, have the controlling interest in the corporation and the trust. According to plaintiffs, defendants are going to amend the bylaws of the corporation to increase the number of directors and amend the trust agreement to give themselves control of the trust.

The chancellor in a two-day hearing took the testimony of nine witnesses and examined 46 exhibits. He believed the plaintiffs' version of the transaction and ordered the temporary injunction to issue.

The appellate court held that the plaintiffs failed to prove the existence of the agreement because there were no corporate minutes of the transaction and because there was no proof of any official corporate action that would have bound the corporation to buy the Goldammer stock. The complaint in this case is not drafted with the particularity with which it might have been and the lay witnesses obviously did not understand the significance of the corporation, the trust and their relationship with these entities in describing this transaction. Nevertheless, the complaint alleges and there is proof to show that this agreement was made by the plaintiffs and defendants as individuals. It is true that the parties are the stockholders of the corporation and beneficiaries of the trust, but the agreement was made among them individually. The defendants were to acquire the Goldammers' 15 shares of the stock in the corporation and the 15% interest in the trust for the benefit of themselves and the plaintiffs and upon being reimbursed, to have the 15 shares of stock and the 15% interest in the trust cancelled. This agreement was not between the corporation and the defendants as the appellate court seemed to believe.

The appellate court in holding that there was no binding agreement in this case also attached much significance to the fact the holders of the stock were not the same as holders of the beneficial interests in the trust. This apparently is based on the premise that the loan was made by the trust for the benefit of the corporation, which is not the case. The record shows that John Friar and Dino Friar are beneficial owners in the trust and are not shareholders, while George Regas is a shareholder who does not have a beneficial interest in the trust. All the beneficiaries of the trust signed the letter of direction to the trustee to make the loan and the proceeds of the loan were to be distributed to the beneficiaries of the trust. The loan, therefore, was for the benefit of the individuals to be used to purchase and retire the Goldammer stock and beneficial interest in the trust. We

attach no significance to the fact that the ownership of the corporation was not identical to the ownership of the trust. The loan by the trust was merely the means by which all these individuals (except for George Regas who had no interest in the trust) would raise the money to purchase the Goldammer interests.

Defendants also argue that the agreement lacks mutuality in that all they had for their alleged promise to buy the Goldammer interests for the benefit of the plaintiffs and defendants "was the hope that there might be a loan obtained of enough to pay off the old first mortgage and an additional amount to reimburse defendants." We have held, of course, that the general rule concerning mutuality of obligation and remedy has no application to contracts in which the provisions which could not be enforced specifically have been fully performed. (*Nyder* v. *Champlin*, 401 Ill. 317, *Kovacs* v. *Krol*, 385 Ill. 593.) The loan has been made and plaintiffs are ready to reimburse defendants. Want of mutuality at the inception of this agreement is no defense. *Gould* v. *Stelter*, 14 Ill.2d 376.

We do not feel that the fact the Goldammer stock was first sold to Louis Carras detracts from plaintiffs' case. The agreement was that Spiros and Gust Regas would buy the Goldammer interests and would have these interests retired when they were reimbursed. Carras is the son-in-law of Spiros, he did not pay for the Goldammer interests, and he held them for only one day.

Plaintiffs proved the existence of an emergency. It is true that they waited about eight months after the filing of the complaint before moving a second time for a temporary injunction, but no third party rights had intervened and there was no need for the injunction until defendants called a meeting for December 18, 1965, at which time they could fulfill their threat to vote the Goldammer stock. The notice of meeting is dated December 7, 1965, and plaintiffs filed their motion for the injunction on December 15, 1965.

We also feel there was a sufficient showing of imminent danger of irreparable damage. The defendants had sent notice of a special meeting of stockholders and had threatened to vote the Goldammer shares for the purpose of changing the by-laws of the corporation and electing officers and directors so as to deprive the plaintiffs of their positions as directors and officers.

The chancellor followed the principles stated in *Centennial Laundry Co.* v. *West Side Organization,* 34 Ill.2d 257, and properly ordered the temporary injunction to issue. The judgment of the Appellate Court, First District, is reversed and the order of the circuit court of Cook County is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*