AMERICAN SNACKS, INC., Plaintiff-Appellee, *v.* RICHARD H. SCHAUL *et al.*, Defendants-Appellants—(AMERICAN SNACKS, INC., Plaintiff-Appellant, *v.* HERMAN BLATTNER *et al.*, Defendants-Appellees.)

(Nos. 54487, 54544 cons.;

First District—March 18, 1971.

McCarthy, Scheurich, Duffy & McCarthy, of Chicago, (John M. Duffy and Daniel J. McCarthy, of counsel,) for appellants.

Fiffer & D'Angelo, of Chicago, (Allan N. Lasky and Allen J. Fagel, of counsel,) for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

On May 12, 1969 American Snacks, Inc. filed a complaint in chancery seeking injunctive relief against use of the trade mark and trade name, "Amy Joy Donuts," by defendants Richard and Rosemary Schaul in connection with the operation of a doughnut bake shop at 7248 Mil-

waukee Avenue, Niles, Illinois. The case was assigned to Judge Lupe. On June 30, 1969 plaintiff filed a petition for temporary injunction to restrain use of the trade name during pendency of the suit. Upon plaintiff's discovery that the Schauls on January 1, 1968, had leased the premises in question to Herman and Ann Blattner, the original complaint was amended on August 6, 1969, to include the Blattners as additional parties defendant. The Blattners presented a petition for change of venue which was allowed and the case as to them was assigned to Judge Epstein. On September 9, 1969, Judge Lupe issued a temporary injunction restraining the Schauls' use of the name, "Amy Joy Donuts." A month later Judge Epstein denied the plaintiff's petition for a temporary injunction against the use of the Amy Joy trade name by the Blattners. An appeal (No. 54487) by the Schauls from the order entered by Judge Lupe has been consolidated in this court with plaintiff's appeal (No. 54544) from Judge Epstein's decision. The facts follow.

On September 16, 1957, the trade name, "Amy Joy Donuts," was registered in Illinois for a period of ten years by Amy Joy, Inc., a subsidiary of Richard's Drive-In Restaurants, Inc., herein referred to as Richard's. The parent corporation, Richard's, was owned by approximately forty shareholders, one of whom was Richard A. Smith. In 1963 the shareholders conveyed their interest in Richard's to Richard A. Smith as trustee, pending full payment of the purchase price for the stock by an undisclosed group of buyers. In 1965 the purchasers of the stock defaulted and Smith, as trustee, foreclosed on their chattel and real estate mortgages in several states, including Illinois. The trustee continued operation of Amy Joy bake shops in several states until March 4, 1968, when American Snacks, Inc. purchased the Amy Joy business together with its trademarks, service marks, trade names and applications for registration thereof. Although registration of the trade name Amy Joy in Illinois expired on September 16, 1967, Richard A. Smith re-registered the name on March 8, 1968, and assigned his rights thereunder to American Snacks, Inc.

In 1961 Richard and Rosemary Schaul leased adjacent lots at 7248-50 Milwaukee Avenue in Niles, Illinois to Jeff's Chicago, Inc., an authorized franchisee of Amy Joy, Inc. The lease provided that the Schauls would at their own cost construct a building on the premises pursuant to designs furnished by an architect designated by Richard's and that Jeff's Chicago, Inc. would thereupon lease the premises for a term of twenty years at a rental based on the cost of constructing the building. Richard's was a guarantor of the obligations assumed by Jeff's Chicago, Inc. under the lease. The cost to the Schauls of constructing the building and erecting a large sign bearing the name, "Amy Joy Donuts—54 Varieties," was

approximately $50,000. After operating from 1961 to 1965, Jeff's Chicago, Inc. defaulted on its lease and went out of business. The Schauls obtained judgment for $67,000 against both Jeff's Chicago, Inc. and Richard's. That judgment has not been paid.

In April 1965, pursuant to a writ of restitution, the Schauls obtained possession of the premises and commenced operations as an Amy Joy Donut Shop. The Schauls alleged in their answer, and it is not denied, that for the next two years Richard Schaul and members of his family worked in the doughnut shop as long as sixteen to twenty hours a day, seven days a week, in order to salvage the business and recoup their initial investment. During the period of the Schauls' operation of the business, the only authorized Amy Joy franchises in the area went out of business. At the time of the hearing on plaintiff's petition for a temporary injunction, only one owner of such a franchise was doing business in the Chicago area and that was at 66th Street and Pulaski Road on the south side of the city, while the premises here in question is in Niles, a suburb bordering the northwest side.

Morris Englander, a vice-president of American Snacks, Inc., represented successive owners of the Amy Joy trade name in their communications with the Schauls. He testified that he had a series of discussions with defendant Richard Schaul which culminated in a meeting in the summer of 1968. He stated that at that meeting Schaul absolutely refused either to execute a franchise agreement or to cease using the trade name. Richard Schaul recalled two conversations with Englander, which he dates as late 1965 and sometime in 1968. In 1965, according to Schaul, Englander entered the doughnut shop with three men who identified themselves as Amy Joy representatives. They told Schaul they "wanted to look over [your] operation and see how it's doing," that they were not sure yet but they might be interested in taking it back. Schaul testified that on that occasion he attempted to convince Englander and his associates to undertake the operation of another franchise on the premises. By 1968 however Schaul no longer sought the intervention of Amy Joy and admits that he refused to execute a franchise agreement on the occasion of Englander's second visit.

■■ A temporary injunction is an extraordinary remedy generally employed only in cases of emergency and then only with caution. (*Naxon Telesign Corp. v. Selig*, 38 Ill.App.2d 242, 186 N.E.2d 666; *Admiral Trailer Mfg. Co. v. All States Trailer Co.*, 351 Ill.App. 513, 115 N.E.2d 560.) Its primary purpose is to preserve matters in *status quo* until the court has had an opportunity to consider the cause on its merits. (*O'Brien v. Mutual*, 14 Ill.App.2d 173, 144 N.E.2d 446; *House of Vision, Inc. v. Hiyane*, 58 Ill.App.2d 431, 208 N.E.2d 390; *Chicago Motor Coach*

*Co. v. Budd,* 346 Ill.App. 385, 105 N.E.2d 140; Nims, Unfair Competition and Trade-Marks (1947), v. 2, § 366.) The *status quo* is defined as the last, actual, peaceable, uncontested status which preceded the pending suit. *Consumers Digest, Inc. v. Consumer Magazine, Inc.,* 92 Ill.App.2d 54, 235 N.E.2d 421; *Miollis v. Schneider,* 77 Ill.App.2d 420, 222 N.E.2d 715.

In the instant case the record discloses that the defendants have used the premises as an Amy Joy Donut Shop since 1966. This use originated when Jeff's Chicago, Inc., an Amy Joy franchisee, defaulted on its lease and in effect abandoned the location to the Schauls. To grant the plaintiff a temporary injunction at this stage of the controversy would disrupt the *status quo* as it has existed without interruption for more than four years.

■■■ We recognize that in the area of trade mark infringement, disruption of the *status quo* is not necessarily dispositive of a petition for temporary injunction. Plaintiff however failed to support its petition with a showing that irreparable injury would result from maintenance of the *status quo* and the defendants have presented a case based on plaintiff's laches which should be heard. (*Max Levy & Co., Inc. v. Kartz,* 250 Ill.App. 353, *cert. denied* 279 U.S. 870; *Seven-Up v. O-So-Grape Co.,* 177 F.Supp. 91, *aff'd* 283 F.2d 1037, *cert. denied* 365 U.S. 869; *Old Lexington Club Distillery co. v. Kentucky Distilleries & Warehouse Co.,* 234 F. 464, *aff'd* 247 F. 1005; *Fruit Industries v. Bisceglia Bros. Corp.,* 101 F.2d 752, *cert. denied* 307 U.S. 646.) Moreover, the immediate harm caused the defendants by the issuance of a temporary injunction clearly outweighs whatever injury might result to plaintiff from maintenance of the status. For these reasons we have concluded that this is not a proper case for temporary injunctive relief.

The order entered in Case No. 54487 restraining the Schauls' use of the premises under the name, "Amy Joy Donuts," is reversed. The order entered in Case No. 54544 denying the plaintiff's petition for temporary injunctive relief against the Blattners is affirmed. The cause is remanded to the trial court for a hearing on the merits of the complaint and for such other proceedings as are consistent with the views herein expressed.

Judgment in case No. 54487 reversed.

Judgment in case No. 54544 affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.