SUMMIT ELECTRIC COMPANY, Plaintiff-Appellee, *v.* WILBERT MAYRENT *et al.,* Defendants-Appellants.

(No. 58903; ▮▮▮▮▮▮▮▮▮▮)

First District (2nd Division)—February 5, 1974.

546

Arvey, Hodes & Mantynband, of Chicago (Gary D. Friedman and Phillip M. Heller, of counsel), for appellants.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Robert A. Skirnick, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an interlocutory appeal from an order entered in the court below granting the motion of plaintiff-appellee, Summit Electric Company (hereinafter Summit), for a preliminary injunction against defendants-appellants, Wilbert and Howard Mayrent, Troy Finley, Viola Berglund, and Associated Electric Company (hereinafter Associated). The appeal is brought pursuant to Illinois Supreme Court Rule 307.

The complaint in the circuit court alleged, *inter alia*, that Summit had been engaged in the electrical contracting business for approximately 50 years; that the individual defendants had been "key supervisory or managing personnel" of plaintiff, who had "knowledge of all of plaintiff's jobs in process, layouts thereon, estimates on bidding therefor, procedures, and clientele" and that as employees, Summit's corporation records, at all times, had been available to the individual defendants; that Wilbert Mayrent had been elected secretary of Summit on December 10, 1968, and remained in said position until December 26, 1972, and that he had been Summit's general superintendent and in charge of distribution and supervision of all Summit's employees in the field; that Howard Mayrent had been employed as Summit's chief estimator; that Viola Berglund had been a secretary and the chief clerical employee of Summit; that Troy Finley had been employed as Summit's general superintendent in the field and worked immediately under Wilbert Mayrent; that sometime prior to December, 1972, the defendants Wilbert and Howard Mayrent had acquired Associated, which previously had been in the electrical contracting business; and that, at various times subsequent to December 26, 1972, the individual defendants left Summit's employ to begin working for Associated.

Utilizing the following numerical designations, the complaint further alleged that:

"13. During the period in which the individual defendants were employed by plaintiff, plaintiff performed services, prepared estimates or bids, did preliminary work or work preparatory to bidding or made analyses of plans and specifications or aided in the preparation of layouts, preliminary budgets or estimates on the following jobs: [Then followed a list of nine job sites not repeated here.]

"14. The individual defendants knew that while they were in the employ of plaintiff, plaintiff was working or preparing for the aforementioned jobs. The individual defendants and each of them either were aware of or performed work on the aforementioned jobs on behalf of plaintiff."

The complaint further alleged that subsequent to leaving the employ-

ment of Summit and joining Associated, the individual defendants sought to bid on certain of the stated jobs; that the actions of the individual defendants are in breach of fiduciary obligations owed to Summit; that if the individual defendants, acting through Associated, were permitted to continue, they would cause irreparable harm to Summit in that it would be deprived of considerable time and personal financial resources expended in connection with the aforementioned jobs; and that it had the right to be free from concern that information gathered by Summit and available to defendants while in Summit's employ, "may" be used by defendants in competition with Summit.

The complaint's prayer for relief, in pertinent part, sought the issuance of a preliminary injunction, restraining and enjoining defendants from seeking to obtain for Associated or themselves, any of the nine enumerated jobs listed in the complaint.

By way of answer, defendants, in pertinent part, denied Summit's allegations that Viola Berglund had been Summit's chief clerical employee and that Troy Finley had been Summit's general superintendent in the field; that defendants were "key supervisory or managing personnel" of Summit, who had knowledge of all of Summit's jobs in process, layouts thereon, estimates on bidding therefor, procedures and clientele, and that, as employees, Summit's corporate records, at all times, had been available to the individual defendants; and that, sometime prior to December, 1972, Wilbert and Howard Mayrent had acquired Associated.

Defendants' answer then went on to admit the allegations of paragraphs 13 and 14 of Summit's complaint, set forth above, and to deny certain other allegations of the complaint. Continuing, defendants' answer asserts the relief sought by Summit constitutes an unreasonable and unlawful restraint of trade and restriction of their rights, that the individual defendants did not agree with Summit not to enter into free and lawful competition with Summit, and that the jobs about which Summit complains are being let upon competitive bidding.

At a hearing held on Summit's motion for the entry of a preliminary injunction, the only witness called by Summit was Wallen Arbetter, one of its executives. Arbetter testified, in part, that certain documents, kept in the regular course of Summit's business, which referred to the Moon Lake Condominium project, reflected preparatory work by either Wilbert or Howard Mayrent, or both; that the plans included in the Moon Lake Condominium project files had been prepared by someone not in his employ; that said plans had been forwarded to him at the same time Summit had been invited to bid on the project; that he had been told by the Moon Lake project's developer representative that bids would be let on a competitive basis; that, with respect to the Holiday Inn project,

no final bid had been made by Summit prior to defendants' leaving Summit's employ; that, regarding the Pine Grove Apartments project, Summit had been informed that its bid for the electrical work had been higher than those submitted by Associated and another electrical contracting firm; and that Summit's file of documents regarding the Holiday Inn project had disappeared.

During oral argument on Summit's motion, the court, in colloquy with counsel wherein he referred to the pleadings on file before him, indicated the reasons which led to the subsequent issuance of the preliminary injunction order:

> "THE COURT: Paragraph 13 [of the plaintiff's complaint] enumerates 1, 2, 3, 4, 5, 6, 7, 8, 9 jobs. It said he [sic], the plaintiff, prepared work and did estimates, you admit that. [sic]
>
> MR. FRIEDMAN (Counsel for defendants): That's right.
>
> THE COURT: Then in Paragraph 14, it says the individual de-defendants knew while they were in the employ of plaintiff, plaintiff was working or preparing to perform more jobs. The individual defendants and each of them either were aware of or performed work on the aforementioned jobs on behalf of the plaintiff. You admit that?
>
> MR. FRIEDMAN: That's correct.
>
> THE COURT: All right. That's all I need.
>
> MR. FRIEDMAN: That's only one of the places where we disagree. But I think we ought to have a record because your Honor has given us no choice what we have to do [sic].
>
> THE COURT: * * * I will enter a judgment for the plaintiff on the pleadings, the admissions in your answers [sic] 13 and 14."

Subsequently, the court below entered an order of preliminary injunction against defendants, enjoining defendants preliminarily from seeking to obtain for Associated or for themselves, their agents, or employees, any of eight enumerated jobs.[1]

Two of the jobs listed in the complaint were not included in the order, but would be subject to further order of court, because Associated had submitted bids, had received the award on one job and was awaiting the letting on the other job.

The single issue presented upon review, as we see it, is whether the trial court abused his discretion in issuing the order of preliminary injunction in the instant case.

---

[1] One of the jobs listed in the order was not included in the complaint, and no evidence was presented to the court about said job.

■■ It is to be noted at the outset that throughout our review of this interlocutory appeal, which is based upon the issuance of a preliminary injunction, we cannot consider the merits of the case, nor are we to decide controverted facts. The only question before this court is to determine, from the record, whether there was a legal basis to sustain the granting of the preliminary injunction. *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1st Dist. 1973), 14 Ill.App.3d 348, 302 N.E. 2d 394.

■■ A preliminary injunction is an extraordinary remedy, and, thus, to warrant its issuance, a party must clearly show a need to preserve the status quo—in that he will be susceptible to irreparable damage if the injunction does not issue—and, in addition, that there is a probability of ultimate success on the merits of his claim. (*Western Leasing Co. v. Kirkpatrick* (1st Dist. 1972), 4 Ill.App.3d 704, 707, 281 N.E.2d 444; *McErlean v. Harvey Area Community Organization* (1st Dist. 1972), 9 Ill.App.3d 527, 292 N.E.2d 479.) *Status quo* is defined as the last actual, peaceable, uncontested status which preceded the pending lawsuit. (*American Snacks, Inc. v. Schaul* (1st Dist. 1971), 132 Ill.App.2d 718, 270 N.E.2d 209.) In order to authorize an injunction, there must be a clear showing of violation of plaintiff's rights, and it must also clearly appear that a specific injury will result by reason of such violation. (*Triangle Sign Co. v. Randolph & State Property, Inc.*, (1st Dist. 1957), 16 Ill.App.2d 21, 27, 147 N.E.2d 451.) While the decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, review is afforded in order to determine whether he has abused his discretion. (*Schlicksup Drug Co., Inc. v. Schlicksup* (3rd Dist. 1970), 129 Ill.App.2d 181, 186, 262 N.E.2d 713; *Master Barbers' and Beauty Culturists' Association of Chicago, Inc. v. Grajek* (1st Dist. 1973), 11 Ill.App.3d 780, 298 N.E.2d 353.) Moreover, unless we find that the trial court has abused the exercise of this discretion, the order of preliminary injunction will not be set aside. *People ex rel. Bolton v. Progressive General Insurance Co.* (1st Dist. 1967), 84 Ill.App.2d 109, 115, 228 N.E.2d 146.

■■ Although it is the rule of law that where no answer has been filed, a preliminary injunction may be issued solely on the sufficiency of the complaint, where an answer has been filed, both pleadings must be considered, and if the answer contains denials of material allegations contained in the complaint, a hearing on those matters must be allowed before an injunction may issue. (*Centennial Laundry Co. v. West Side Organization* (1st Dist. 1965), 55 Ill.App.2d 406, 414, 204 N.E.2d 589.) As this court stated at page 241 of *Professional Business Management, Inc. v. Clark* (3rd Dist. 1967), 83 Ill.App.2d 236, 227 N.E.2d 371:

"Where an answer is filed to an application for a temporary injunction denying the material allegations of the complaint, and the legal sufficiency of such answer is unchallenged, a temporary injunction will usually not be granted unless after hearing the trial court reasonably concludes, on the basis of the evidence, that complainant will probably be entitled to the ultimate relief; that the applicant would suffer immediate and certain injury if the temporary relief requested were to be withheld; and that the granting of such protection outweighs any possible injury that might be done defendant by its issuance. See Nichols, Illinois Civil Practice, § 2285; 21 ILP, Injunctions, § 12."

In reviewing the record presented, we note, first of all, that while defendants, in their answer filed before the court below, admitted several important allegations contained in Summit's complaint—including the allegations of paragraphs 13 and 14 of the pleading—they, at the same time, *denied* several other material allegations put forth by Summit, to wit: (1) that defendants were in breach of fiduciary obligations owed to Summit and that they sought to deprive Summit of corporate opportunities to which Summit was entitled; (2) that the actions of defendants would cause Summit irreparable harm due to the deprivation of considerable time and personal financial resources allegedly expended by Summit in connection with the listed jobs, all of which, allegedly, would have wrongfully accrued to defendants' benefit; (3) that Summit was entitled to obtain the listed jobs without competition from defendants; and (4) that Summit was without an adequate remedy at law.

Furthermore, defendants' answer denied that defendants were "key supervisory or managing personnel" of Summit, who had knowledge of all of Summit's jobs in process, layouts, estimates on bidding, and so forth; denied that Viola Berglund had been Summit's chief clerical employee and that Troy Finley had been Summit's general superintendent in the field; and affirmatively set forth defendants' theory of why defendants should not be enjoined.

Other than the pleadings, the only evidence presented at the hearing on Summit's motion was the inconclusive testimony of Wallen Arbetter, a Summit executive.

■■ Summit did not allege that defendants were using the knowledge available to them while in the employment of Summit in bidding against Summit. Summit's complaint alleged only that it feared defendants "may" use such knowledge. The fact that a plaintiff apprehends that some wrong may be done is not sufficient to cause the issuance of temporary injunction. *Jacobs v. Regas* (1st Dist. 1966), 75 Ill.App.2d 283, 221 N.E. 2d 140.

■■   Summit does not argue that its cause of action involves trade secrets or is the result of any contract with its employees. Summit's entire argument is predicated upon the fact that it alleges that there existed fiduciary relationships between Summit and defendants. A fiduciary relationship automatically exists between a corporation and an officer in that corporation. (*Paulman v. Kritzer* (2nd Dist. 1966), 74 Ill.App.2d 284, 219 N.E.2d 541, *affirmed* 38 Ill.2d 101, 230 N.E.2d 262.) Here, only one of the defendants was an officer in the Summit corporation. Summit's allegation relative to the other defendants was merely that they occupied certain positions which it characterized as "key" personnel positions.

■■   A fiduciary relationship exists in cases where a confidential relationship has been acquired. In *Illinois Rockford Corp. v. Kulp* (1968), 41 Ill.2d 215, 242 N.E.2d 228, the supreme court quoted from *Pfaff v. Petrie* (1947), 396 Ill. 44, 50, 71 N.E.2d 345 as follows:

> "A fiduciary relation exists in all cases in which a confidential relationship has been acquired. The origin of the confidence is immaterial. It may be moral, social, domestic, or purely personal."

In the case at bar, Summit's only allegations concerning a confidential relationship between the defendants and Summit was that defendants were key supervisory or managing personnel and that defendants either did preliminary work or had knowledge of preliminary work done on various job sites while in the employ of Summit. Subsequent to leaving Summit's employ, defendants purchased another corporation, and, in direct competition with Summit, sought to bid on the same job sites. The issue then becomes whether the allegations in Summit's complaint were sufficient to establish a fiduciary relationship between Summit and defendants.

Summit, in its brief before this court, contends that the complaint alleged a breach of fiduciary obligation through the defendants' appropriation of corporate opportunities to which Summit was and is entitled. It relies on cases of which *Consumers Co. v. Parker* (1923), 227 Ill.App. 552 is representative. In *Consumers*, an employee, having knowledge that his employer's lease was expiring and having the duty to renegotiate the lease for his employer, obtained the lease for himself. The court held that the action violated the fiduciary duty owed by the employee to his employer. In our opinion, based solely on the pleadings and the limited evidence in the record, the trial court's order in this case cannot now be justified on Summit's theory.

■■   In our opinion, the entry of a preliminary injunction was not warranted because of the paucity of evidence at the injunction hearing and because several crucial, material allegations of Summit's complaint had been categorically denied by defendants. The entry of the order granting

the preliminary injunction, based upon the pleadings alone in this case was an abuse of the trial court's discretion, and must, therefore, be overturned.

For these reasons, then, the order of the circuit court of Cook County is reversed and the cause remanded.

Reversed and remanded.

STAMOS and LEIGHTON, JJ., concur.