Consumers Digest, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Consumer Magazine, Inc., an Illinois Corporation, and Louis Weber, Defendants-Appellants.

Gen. No. 52,140.

First District, Fourth Division.

February 7, 1968.

Benjamin H. Black and Theodore R. Sherwin, of Chicago (Black & Beermann, of counsel), for appellants.

David P. List and Thomas H. Morsch, of Chicago (Leibman, Williams, Bennett, Baird and Minow (of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order entered in the Circuit Court of Cook County on March 10, 1967, issuing a preliminary injunction against the defendants which enjoined the defendants during the pendency of the action from:

> "a) directly or indirectly owning, managing, operating, joining, controlling, or participating

in the ownership, management, operation or control of or being involved in any manner with any business, trade or occupation similar to, or in competition with, the business of the plaintiff; and

"b) printing, publishing, distributing, selling or soliciting subscriptions or renewal subscriptions for any book, magazine, periodical, directory or catalog of the type heretofore distributed by defendants under the names and titles "Consumer Magazine" and "Consumer Magazine Price Guide.""

On July 12, 1966, Consumers Digest, Inc., as plaintiff, filed a complaint in three counts, asking for a temporary and permanent injunction and damages for alleged infringement of plaintiff's rights in the name and title of Consumer Magazine Price Guide and Consumer Magazine; and upon alleged violation by the defendant, Louis Weber, of a restrictive covenant in the contract of sale of corporate shares.

On August 16, 1966, the plaintiff moved for a summary judgment as to Count I, which count prayed for a temporary and permanent injunction restraining the defendants from publishing, advertising, selling or otherwise distributing any directories, magazines or other publications under the name or title "Consumers Magazine" or any other name or title imitating or confusingly similar to plaintiff's name and title "Consumers Digest Price Buying Guide" or "Consumers Digest Magazine."

Affidavits and exhibits were filed in support of plaintiff's motion. After considering the affidavits, exhibits and all of the pleadings and briefs, the court denied plaintiff's motion for summary judgment on December 16, 1966, finding ". . . that there is a genuine issue as to material facts and that the plaintiff is not entitled to a judgment or decree as a matter of law."

On January 20, 1967, plaintiff filed its motion for a preliminary injunction. On February 14, 1967, defendants filed a motion asking the court to deny the issuance of a preliminary injunction. On March 10, 1967, the court entered an order issuing the preliminary injunction prayed for.

The case grew out of the following facts appearing in the record. From 1960 to 1963, two brothers, Arthur Weber and defendant Louis Weber, were the owners of all the issued and outstanding stock of three related companies; Van Leer Corporation, Consumers Digest, Inc., and American Sales Company. Consumers Digest, Inc., the plaintiff in this suit, was formed in 1963. Defendant Weber worked for these three companies. During this period Van Leer Corporation published and distributed Consumers Digest Magazine and annual and semiannual issues of Consumers Digest Price Buying Directory.

Defendant Weber left the employ of plaintiff during December 1963, after which disputes arose between the defendant and his brother, Arthur Weber, culminating in a lawsuit. In settlement of this litigation and to settle other disputes, Louis Weber, his brother Arthur, and the three corporations entered into an agreement dated June 18, 1964, which provided for the sale of Louis Weber's stock and interest in the corporations, and for Louis Weber's specific covenant not to compete, in consideration of the sum of $190,000, which sum was paid to Louis Weber. His attorney was present at the time of the execution of the agreement.

On September 1, 1965, fifteen months after the execution of the agreement, defendant Louis Weber formed an Illinois corporation called Consumer Magazine, Inc., of which he is president and sole stockholder. The new corporation, which is also a defendant in the instant case, promptly began to solicit subscriptions to Consumer Magazine and a Consumer Magazine Price Buying Guide.

57

Plaintiff contends that the format of the price buying guide published by defendants and plaintiff's annual and semiannual price buying directories are almost identical, and that defendants' magazines contain exactly the same type of information and appeal to the same sort of reader, and that defendants' promotional material is strikingly similar to plaintiff's. Plaintiff further contends that the defendants used the same type of direct mail solicitation to obtain subscribers; that plaintiff presently has over 400,000 active subscribers throughout the United States, and some foreign countries; that plaintiff had 225,000 members a year ago; and that at the time of the hearing the defendants had over 40,000 subscribers. Since the restrictive contract was signed the plaintiff spent over $3,000,000 in soliciting subscriptions.

The covenant entered into between plaintiff and defendant Louis Weber provided as follows:

> Louis Weber agrees that for a period of seven years from the date of the signing of this Agreement, he will not directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of or be involved in any manner with any business anywhere in the United States in any business, trade or occupation similar to or in competition with the business of the Van Leer Corporation, Consumers Digest, Inc., or American Sales Company, nor will he disclose any information learned in his capacity as an officer, director or employee of said corporations to any unauthorized persons. The parties agree that this covenant is designed to protect the current business of the Van Leer Corporation, Consumers Digest, Inc., and American Sales Company and that it should be limited so as to apply only to the extent necessary to protect such business. In the event that any court of competent jurisdiction determines that the restric-

tions as herein set forth, are too broad so as to construe any unreasonable restrictions, the parties hereto authorize any judge sitting in such court to modify this covenant to provide that the restrictions herein contained shall apply and be enforceable to the maximum extent permitted by law for such restrictions, and, further, upon such determination, to enforce the covenant as so modified. Louis Weber hereby agrees that in the event the remedies at law for the breach of this covenant are inadequate, the corporations may seek and obtain injunctive relief from a court of equity for a breach or threatened breach of this covenant and for such purpose, Louis Weber hereby waives the requirements of any proof that such breach will cause irreparable injury to any of the corporations or that there is no adequate remedy at law. The aforesaid covenants and restrictions are subject to the discretion of the court to determine whether said covenants and restrictions have been breached.

The defendants here argue that the court was in error in granting a temporary injunction when prior to the application for temporary injunction, the court had denied plaintiff's motion for a summary judgment on the ground that there was a genuine issue of material fact; that the court in allowing the temporary injunction had abused its discretion inasmuch as the plaintiff failed to move for such relief until the plaintiff's motion for summary judgment had been denied; that there was an inexcusable delay in asking for temporary injunction; that the temporary injunction determined controverted rights; that the plaintiff is guilty of unclean hands; and that the restrictive covenant was void.

The defense contends that there was no direct competition inasmuch as Louis Weber testified that he had left the employ of plaintiff because he felt that the plaintiff

and Van Leer Corporation were engaged in unethical and immoral acts at the time; that Van Leer Corporation, American Sales Company, and the plaintiff are really one company engaged in the sale of merchandise through the catalogs of plaintiff; that the main purpose of Consumers Digest was to sell to members its own merchandise under the name of American Sales Company, and that the American Sales Company belonged to Consumers Digest.

Louis Weber further testified that his Consumer Magazine reports on profits and savings in the purchase of goods, including the retail prices and low discount prices, and publishes a consumer magazine price buying guide. It further appeared in the record that the format of the price buying guide published by the defendant, Consumer Magazine, Inc., and the plaintiff's annual and semi-annual price buying directories are almost identical; that the defendants' magazine, although somewhat larger in size than the plaintiff's, contains exactly the same sort of information; that the defendants, like the plaintiff, solicit subscribers directly by the use of mailing lists, and the defendants' promotional material is strikingly similar to plaintiff's; and that plaintiff has received more than four or five hundred pieces of mail from the public indicating actual confusion between the two companies.

Louis Weber testified that in his opinion there was no competition. All of these conflicting contentions are, of course, questions of fact which must be determined on a full hearing.

█ The defendants argue in this court that there was an abuse of discretion in the court's awarding a temporary injunction when the court had denied plaintiff's motion for summary judgment for the reason that there was a genuine issue of material fact requiring a trial on the merits. In the argument on that point defendants set out that the granting of the injunction was inconsistent with the finding and order on the motion for summary judg-

ment that there was a genuine issue as to material facts requiring trial on the merits; however, that argument is not in point because the purpose of a summary judgment and the purpose of a temporary injunction are very far apart.

■■ The purpose of a temporary injunction is merely to preserve the last actual peaceable uncontested status which preceded the pending suit. House of Vision, Inc. v. Hiyane, 58 Ill App2d 431, 208 NE2d 390. A temporary injunction is merely provisional in its nature and does not conclude a right. People v. Standidge, 333 Ill 361, 164 NE 844.

■ The defendants argue that the awarding of the temporary injunction determined controverted rights and granted plaintiff all the relief which could be obtained in a final decree. That argument is not tenable, since it is well recognized that the purpose of a temporary injunction is to protect the plaintiff by maintaining the parties in the same position they were in prior to the time when this dispute arose. It has been repeatedly stated that the granting or refusing of a temporary injunction is a matter resting in the sound discretion of the court.

■ The defendants also argue that the fact that the original suit was filed on June 12, 1966, the motion for summary judgment denied December 16, 1966, and the motion for preliminary injunction filed January 20, 1967, indicates such laches on the part of plaintiff as should estop it from filing its motion for preliminary injunction. We do not think the fact that the plaintiff filed its motion for summary judgment before it filed its motion for preliminary injunction constitutes, under the facts and circumstances of the case, such laches as would result in an estoppel against the plaintiff.

■ The next objection made by the defendants is that the temporary injunction should not have been granted because it is alleged that the plaintiff comes into a court of equity with unclean hands. The defendants argue

61

that because of the fact that the plaintiff in its publication, Consumers Digest, carries recommendations as to merchandise sold by American Sales Company and Consolidated Furniture Wholesalers and other companies owned by Arthur Weber, president and sole stockholder of plaintiff, it was a fraud upon the public and consequently, the court in its discretion should have denied the preliminary injunction. In support of this contention defendants cite American University v. Wood, 294 Ill 186, 128 NE 330. However, in that case the court does take the view that as a general rule it is required that the wrongdoing or fraud of the complainant, to bar him from relief on the ground that he comes with unclean hands, must be connected with the subject of the litigation and have some relation to the rights of the parties arising out of the transaction. The court held that the misrepresentations of the complainant in the conduct of its business affected the public, and it would seem strange if a court of conscience should be required to protect him in the commission of a fraud upon the public. That case is not applicable to the facts as disclosed by the record in the instant case.

In Stein v. Bieber, 342 Ill App 583, 98 NE2d 156, the court said at 590:

"It does not, however, extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy and make its interference depend upon the character and conduct of the moving party, in no way affecting the equitable right which he asserts against the defendant or the relief which he demands. (Citing cases.)"

In the instant case it would appear to this court that a determination that whether or not there is a fraud

upon the public can be made only upon a full hearing. At the time the contract was entered into the defendant, Louis Weber, had for a considerable period of time been connected with the plaintiff in the various businesses to which he now so strenuously objects, and for his interest in which he was paid a substantial sum of money. All of these things were known to him at the time he voluntarily signed the restrictive covenant under consideration here, and he was advised by his lawyer at that time. It is necessary that upon a hearing it be determined if there is such fraud as would bring the conduct of the plaintiff within the rules laid down in the cases.

Upon a careful consideration of the record in this case it is apparent that the trial court did not by the granting of a temporary injunction determine any rights either of the defendants or of the plaintiff, which rights, if any, must be determined upon a full hearing. The trial court did not abuse its discretion, and properly awarded the preliminary injunction.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.