ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, Cross-Appellee, JOHN HORN, Defendant-Appellee, Cross-Appellant.

(Nos. 58803, 59489 cons.;

First District (2nd Division)—November 26, 1974.

584

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland, D. Kendall Griffith, and Stanley J. Davison, of counsel), for appellant.

Herbert M. Berman and Daniel N. Kadjan, both of Chicago (Arnold and Kadjan, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Allstate Insurance Company (Allstate) appeals from an order of the circuit court of Cook County which dismissed, on the merits, Allstate's action for declaratory judgment and confirmed an arbitration award in favor of John Horn. Horn has cross-appealed and seeks, in the event that the judgment of the circuit court is either reversed or remanded, a reversal of an earlier order denying defendant's motion for summary judgment.

The facts are virtually undisputed. Allstate issued Christ Lindbom an

automobile liability policy which included uninsured motorist coverage in the amount of $10,000. The policy provided, *inter alia*:

> "Allstate will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such automobile.
>
> \* \* \*
>
> The 'insured' means:
> 1. The named insured and his relatives;
> 2. Any other person occupying an insured automobile;  \* \* \*."

The policy defined "occupying" as "in or upon, or entering into or alighting from" the insured vehicle.

Shortly after midnight on May 31, 1969, the defendant, John Horn, was riding in the Lindbom vehicle which was being driven by Bruce Lindbom, a relative of the named insured. Lindbom parked the car on the northeast side of Clybourn Avenue, which runs northwest to southeast and is six lanes wide including a lane in each direction for parked cars. Both parties exited the car, walked across to the south side of Clybourn and entered a restaurant. Subsequently, the parties exited the restaurant and were preparing to cross Clybourn to the Lindbom vehicle. Upon stepping from the sidewalk Lindbom and defendant walked between two parked cars on the south side of the street. At that point an automobile operated by an uninsured motorist was proceeding northwest on the north side of the street. The driver crossed the centerline, entered the southeast bound lanes and struck Lindbom and defendant while they were standing 2 feet from the parked cars in the southbound lane closest to the parked vehicles. At the time the parties were injured they were at a point approximately 24 feet from the Lindbom vehicle.

On June 5, 1969, plaintiff received a notice of attorney's lien, indicating that a certain law firm was representing Bruce Lindbom in a claim against plaintiff for personal injuries under the above quoted uninsured motorist provision. In reply to this lien plaintiff sent a form letter to Lindbom informing him that the claim could not be identified and that Allstate needed the policyholder's name and address, the policy number, and the date and location of the accident. Through a telephone conversation with Lindbom, plaintiff learned that defendant Horn had been with Lindbom at the time of the accident. On June 23, 1969, before any investigation of the occurrence had been conducted, plaintiff sent defendant a form letter which is customarily sent to parties reported to be with an insured at the time of an accident. The letter requested defendant to fill out the enclosed "Notice of Injury-Proof of Loss" form,

and to have his doctor complete certain medical reports. The letter further stated that when Allstate received the requested reports and final medical bills, defendant's claim would be processed for payment. Allstate did not receive any response to the letter.

In December of 1970, Lindbom's claim was adjusted and settled.[1] The first document plaintiff received indicating that defendant was making an uninsured motorist claim was a copy of a "Demand for Arbitration" which had been filed with the American Arbitration Association (hereinafter Association). A copy of the demand was received by plaintiff on February 1, 1971, a year and 8 months after plaintiff's letter to defendant. Plaintiff did not have an open file on the claim at this time, and upon receipt of the demand, Allstate forwarded the notice to legal counsel.

On March 2, 1971, the arbitration hearing was set for April 21, 1971. On March 8, 1971, plaintiff's attorneys sent a letter to defendant's attorneys stating that Allstate had received the demand for arbitration and requested that defendant appear in counsel's office on April 29, 1971, for the purpose of taking his statement pursuant to a condition of the uninsured motorist endorsement. The letter further stated:

> "In addition, we wish to inform you that a coverage question exists on this file. We will be unable to proceed with an arbitration hearing until same is resolved."

A copy of this letter was sent to the Association. On March 11, 1971, the Association wrote a letter to plaintiff's counsel acknowledging receipt of the above letter. The Association then sent a copy of this letter to defendant's attorneys and requested that the claimant, John Horn, file a reply to Allstate's assertion that a coverage question existed. The claimant did not reply and on March 23, 1971, the Association sent his counsel another letter requesting a reply.

On April 9, 1971, defendant's counsel telephoned the Association and advised that he would not agree to a continuance of the April 21 date. The Association then sent a letter to counsel for both parties stating that if Allstate did not file a declaratory judgment action before the April 21 date, and if it still requested a continuance on the hearing date, it would be necessary to get the arbitrator's ruling on whether or not the hearing should proceed.

On April 14, 1971, the arbitrator requested a continuance of the hearing due to trial proceedings which would produce a conflict for the

---

[1] There was no question that Bruce Lindbom was insured under the policy. As a relative of the named insured he was covered by the uninsured motorist provision regardless of whether he was an occupant of the vehicle.

arbitrator. On April 20, 1971, it was determined that the first date upon which the arbitrator would be available would be May 20, 1971, whereupon the hearing was continued until that date.

On May 14, 1971, plaintiff's counsel took the statement of John Horn, and on May 19, 1971, the arbitration hearing was reset pursuant to plaintiff's request for July 8, 1971. On June 25, 1971, the Association received a letter from plaintiff's counsel requesting a continuance because he would be out of town. Defendant's attorney agreed to the continuance and suggested the date of July 28, 1971. On July 7, 1971, the hearing was reset for August 16, 1971, because the arbitrator would not be available on July 28. The August 16 date was marked "final."

On August 13, 1971, a Friday, plaintiff filed its complaint for declaratory judgment alleging that the defendant was walking as a pedestrian at the time he was struck by the uninsured motorist, and therefore, was not entitled to uninsured-motorist coverage because he was not then an "occupant" of the insured vehicle as defined by the policy. Allstate requested that the court find that the defendant was not entitled to any benefits of the uninsured-motorist coverage and that the court immediately enter an order enjoining defendant from proceeding before the Association until such time as the coverage question would be determined.

On August 16, 1971, the following Monday and the date on which the arbitration hearing was to be held, plaintiff filed a motion in the circuit court asking that all proceedings before the arbitrator be stayed pending a hearing before the court on the coverage issue. The motion was denied and that afternoon the arbitration hearing was held. Counsel for plaintiff appeared at the hearing, stated that Allstate would stand on its position that there was no coverage, and refused to participate in the arbitration proceedings. On August 18, 1971, the arbitrator rendered an award of $10,000 to defendant.

On November 13, 1971, plaintiff filed an amendment to its complaint for declaratory judgment seeking the additional relief that the award entered by the arbitrator on August 18, 1971, be vacated and set aside. On December 1, 1971, defendant filed a "Petition to Confirm Award of Arbitrator" and also filed an answer to the complaint for declaratory judgment in which he alleged that defendant was an "occupant" of the insured vehicle, and, as an affirmative defense, alleged that plaintiff was estopped to assert any coverage defenses due to its dilatory tactics in denying the claim. Based upon its finding that plaintiff was estopped to assert its policy defense, the trial court dismissed the declaratory judgment action on the merits and confirmed the award of the arbitrator.

Plaintiff initially contends that the trial court erred in holding

that plaintiff was estopped from asserting its coverage defense. We must agree. Estoppel has been defined as follows:

"'Estoppel * * * arises whenever one by his conduct, affirmative or negative, intentionally or through culpable negligence, induces another to believe and have confidence in certain material facts, and the latter having the right to do so, relies and acts thereon, and is as a reasonable and inevitable consequence, misled, to his injury.'" (*Kelly v. Terrill*, 132 Ill.App.2d 238, 240-41, 268 N.E.2d 885.)

It is defendant's theory that estoppel applies to the present cause in that the letter of June 23, 1969, sent by plaintiff to defendant induced defendant to believe that plaintiff would pay his claim; and that plaintiff's delay in not filing its declaratory judgment until more than 2 years after the accident prevented defendant from pursuing his remedies against the uninsured motorist. Since defendant claimed that estoppel applied, he had the burden of proving it clearly, concisely, and unequivocally. *Jennings v. Bituminous Casualty Corp.*, 47 Ill.App.2d 243, 197 N.E.2d 513.

Although defendant's argument emphasizes plaintiff's conduct subsequent to February 1, 1971 (the date plaintiff received the "Demand for Arbitration"), we think the premier issue is the interpretation of, and the effect to be given, the letter of June 23, 1969. For if the letter sent by plaintiff provides no basis for the estoppel, we are of the opinion that the interim delay in the processing of the claim (June 23, 1969, to February 1, 1971) must be attributable to defendant. The letter, in relevant part, stated:

"We have a report that you were injured in an accident on the date shown and wish to file a claim for your medical expense.

So that we can process your claim promptly, would you please do the following:

* * *

Just as soon as we have the reports and final medical bills, we will process your claim for payment."

■■ The record reveals that the first time plaintiff learned that defendant had been involved in the occurrence was through a telephone call with Lindbom, plaintiff's insured; that shortly thereafter, plaintiff sent defendant the above correspondence, a form letter which is customarily sent to parties involved in an accident. The requested forms were not filled out, no medical bills were forwarded, no response to the letter was received, and nothing further was heard from defendant until 18 months later when the demand for arbitration was received. A party claiming

the benefit of estoppel must establish that the representation made by the party estopped not only was intended to induce the other party to act, but must have reasonably induced the party to act. (*Sabath v. Morris Handler Co.*, 102 Ill.App.2d 218, 243 N.E.2d 723.) Although the phraseology of the form letter—"we will process your claim for payment"—may have been more artfully drafted, a fair and objective reading of the letter does not suggest that plaintiff made an unqualified representation to pay any claim that defendant may have asserted. It did represent that plaintiff would "process" the claim upon receipt of certain information. In this context, the word "process" is not limited merely to those administrative activities in issuing payment, but fairly includes a determination of liability to pay. It is significant to note that the letter was dispatched without solicitation or claim made by defendant and at a time when no investigation of the incident had been initiated. As we construe the form letter, and the circumstances of its issuance, the representations therein were not of such nature to preclude plaintiff from asserting a coverage defense. In any event, the representation to "process the claim for payment" was subject to certain conditions precedent, and defendant, having failed to fulfill those conditions, cannot predicate its estoppel argument upon the terms of the form letter.

Furthermore, defendant, not having furnished the requisite information, cannot now be heard to complain of unreasonable delay and dilatory tactics with reference to the period prior to February 1, 1971. In fact, since defendant had not notified plaintiff that he desired to make a claim within this 18-month period, the natural implication of defendant's failure to respond is that he did not desire to make any claims for medical expenses arising from the incident. Under these circumstances, we fail to see how plaintiff had a duty to investigate the accident and promptly assert its nonliability until such time as defendant communicated its desire to make a claim.

The incident in question occurred on May 31, 1969, and under the statute of limitations applicable to personal injuries, defendant had until May 31, 1971, to file suit against the uninsured tortfeasor. Defendant argues that, because of plaintiff's dilatory conduct in denying liability, defendant was deprived of pursuing any remedies which he may have had against the tortfeasor. It is, as defendant contends, the law that an insured should have a right to know with reasonable promptness the attitude of the insurer, so that he might take such actions as would save himself from loss and damage. (*Allstate Insurance Co. v. Keller*, 17 Ill. App.2d 44, 149 N.E.2d 482.) However, under the circumstances of the present case, we judge that plaintiff did not fail to promptly assert its

non-liability. Although any remedy defendant may have had against the third-party tortfeasor would be barred after May 31, 1971, plaintiff had not received any communication from defendant until February 1, 1971. For the reasons stated earlier, the reasonableness of plaintiff's conduct in disclaiming liability must be judged within this 4-month period. It is undisputed that on March 8, 1971, plaintiff informed defendant that a coverage question existed and that arbitration would not proceed until the coverage question was resolved. Thus, at this point, defendant still had almost 3 months in which to commence suit against the third-party tortfeasor. It is also at this point that a controversy regarding the coverage issue first arose. Moreover, plaintiff was not able to obtain defendant's statement, pursuant to a condition in the uninsured motorist endorsement, until May 14, 1971. It is true that plaintiff did not file its declaratory judgment until after the Statute of Limitations had run, but given the relatively short period of time in which plaintiff had to act, and the fact that the initial delay of more than 18 months was occasioned by defendant, we think plaintiff's conduct in disclaiming liability was reasonably prompt under the circumstances. Accordingly, the trial court erred in holding that plaintiff's conduct constituted a waiver by estoppel of its right to assert the coverage defense.

■■■ Having resolved the issue of estoppel against plaintiff, the trial court did not decide the issue of whether defendant was insured under the policy. All the evidence on the coverage issue was presented and there is no dispute as to the essential facts. The policy provided that any person "occupying" the insured vehicle was an "insured" under the uninsured motorist provision and further defined "occupying" as "in or upon, or entering into or alighting from" the insured vehicle. It is undisputed that defendant was struck while preparing to cross four lanes of traffic on his way to the Lindbom vehicle, and that defendant was at least 24 feet from the vehicle at the time of impact. It is plaintiff's position that based upon these facts defendant was not, as a matter of law, entering into the vehicle and therefore was not an insured under the policy. Defendant does not argue the issue on appeal as he should pursuant to Supreme Court Rule 341(f), and it is sufficient to state that one who is 24 feet from a vehicle is not "entering into" it, and therefore not "occupying" it, within the meaning of the policy. *New Amsterdam Casualty Co. v. Fromer* (D.C. App. 1950), 75 A.2d 645; *Jarvis v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.* (1956), 244 N.C. 691, 94 S.E.2d 843; *Ross v. Protective Indemnity Co.* (1948), 135 Conn. 150, 62 A.2d 340.

In its cross-appeal, defendant argues that the trial court erred in

denying its motion for summary judgment against plaintiff's amended complaint for declaratory judgment.[2] In its motion for summary judgment, defendant argued that the circuit court's denial of plaintiff's motion for a temporary injunction operated as res judicata as to all issues of coverage.

Plaintiff filed its motion for a temporary injunction 3 days after it filed its complaint for declaratory judgment. In its motion, plaintiff sought an order enjoining defendant from proceeding at the American Arbitration Association until the court decided the merits of plaintiff's complaint for declaratory judgment. The trial court denied the motion on the sole and specific reason that since the declaratory judgment had been assigned to a different judge, who was not sitting that day, the motion should be decided by the latter upon his return. On the same day the arbitration hearing was held and the Arbitrator rendered an award of $10,000 to defendant. Plaintiff then filed an amendment to its complaint for declaratory judgment seeking the additional relief that the award entered by the Arbitrator be vacated. Defendant then filed its motion for summary judgment, and under the authority of *Liberty Mutual Insurance Co. v. Duray*, 5 Ill.App.3d 187, 283 N.E.2d 58, argued that the denial of plaintiff's motion for a temporary injunction operated as res judicata as to all issues of coverage.

In the *Liberty Mutual* case, the insured filed a "Demand for Arbitration" to which the insurer objected. The objection was denied by the American Arbitration Association. The insurer then filed a petition to stay arbitration in the circuit court pursuant to section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1969, ch. 10, par. 102(b)), which provides for the substantive disposition of the coverage issue. The petition raised the coverage issue involved, but apparently the issue was not actually litigated. The circuit court denied the petition. Four and one-half months later, the insurer separately filed a complaint for declaratory judgment requesting that the court consider and adjudicate the

---

[2] Defendant's motion sought summary judgment, or in the alternative, requested leave to add the affirmative defense of res judicata to its answer. The allegations of the motion, and the hearing thereon, were limited strictly to the legal issue of former adjudication. There was no dispute as to any material fact, and consequently, the motion was more in the nature of a section 48 motion (see Ill. Rev. Stat. 1971, ch. 110, par. 48(d)) filed in response to an amended complaint. The character of a pleading is determined more from its content than by its label (*Dross v. Farrell-Birmingham Company*, 51 Ill.App.2d 192, 200 N.E.2d 912), and although the trial court denied defendant's "motion for summary judgment," our review of its denial is not precluded by the rule that the denial of summary judgment is not reviewable because it is superseded by the subsequent trial. See *Home Indemnity Co. v. Reynolds & Co.*, 38 Ill.App.2d 358, 187 N.E.2d 274.

question of coverage. This action was dismissed on the ground that the denial of the petition was res judicata of the issues raised.

██ The present case is readily distinguishable from the *Liberty Mutual* decision. Unlike *Liberty Mutual,* in which two separate actions were brought, the motion for a temporary injunction here was clearly ancillary to the main action for declaratory and injunctive relief. The motion did not seek a hearing on the coverage issue, but merely asked that the arbitration proceeding be stayed until the coverage issue, as raised in the complaint for declaratory judgment, was decided. In any event, the grant or denial of a preliminary injunction is not an adjudication of the ultimate rights in controversy, and in subsequent proceedings is not conclusive on either the court or the parties to the action. (*Consumers Digest, Inc. v. Consumer Magazine, Inc.,* 92 Ill.App.2d 54, 235 N.E.2d 421; *Santowsky v. McKey,* 249 F. 51.) Therefore, the trial court correctly held that the denial of the motion was not a former adjudication of the matters raised in the complaint for declaratory judgment.

██ Finally, defendant contends that the award of the Arbitrator is final and binding. We disagree. Section 12(5) of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 112(5)) provides that the circuit court may vacate an award upon a showing that there was no arbitration agreement. Under Illinois law, coverage disputes are not included in arbitration provisions of automobile liability policies relating to resolution of disputes arising under an uninsured motorist provision, and arbitration is limited to a determination of issues of liability of the uninsured third-party tortfeasor and damages to the insured. (*Flood v. Country Mutual Insurance Co.,* 41 Ill.2d 91, 242 N.E.2d 149; *Farmers Insurance Group v. Harris,* 4 Ill.App.3d 372, 279 N.E.2d 789.) Consequently, the arbitrator had no authority to decide the coverage question and its award is properly vacatable.

██ Pursuant to Supreme Court Rule 366 (Ill. Rev. Stat. 1971, ch. 110A, par. 366), this court may, in its discretion, enter any order, and grant any relief, which the case may require. Where a cause is tried by a court without a jury, and where the parties have had the opportunity to present all their evidence, as in the instant case, no useful purpose is served by remanding the matter to the trial court for a new trial. (*Vallarta v. Lee Optical of Missouri, Inc.,* 12 Ill.App.3d 112, 298 N.E.2d 212.) The facts relating to the issue of coverage are undisputed and we have determined, as a matter of law, that defendant was not an insured within the meaning of the policy. Therefore, the order of the circuit court denying defendant's motion for summary judgment is affirmed; the judgment of the circuit court against plaintiff on its complaint for de-

claratory judgment is reversed, and the cause is remanded with directions to enter judgment for plaintiff.

Affirmed in part; reversed and remanded in part with directions to enter judgment for plaintiff.

HAYES, P. J., and LEIGHTON, J., concur.