IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| MARGARET BROWN, | ) C/A NO. 03A01-9509-CV-00308 |
| Plaintiff, | ) SULLIVAN COUNTY LAW COURT |
| | ) |
| v. | ) |
| | ) |
| GARY M. WHITE, RACHEL M. WEBER, | ) |
| KIMBERLY R. ANDERSON, and | ) |
| VFW POST NO. 3382, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) HONORABLE JOHN S. McLELLAN,III, |
| | ) JUDGE |
| CUMIS INSURANCE SOCIETY, | ) |
| | ) |
| Uninsured Motorist | ) |
| Carrier/Appellant, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Uninsured Motorist | ) |
| Carrier/Appellee. | ) AFFIRMED AND REMANDED |

FILED

**March 19, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

LARRY V. ROBERTS, Kingsport, for Appellant Cumis Insurance Society

JACK M. VAUGHN, of MILLER & VAUGHN, Kingsport, for Appellee State Farm Mutual Automobile Insurance Company

O P I N I O N

Susano, J.

This case involves a question of uninsured motorist insurance coverage. It appears to be one of first impression in the appellate courts of this state. We are asked to decide if

the plaintiff Margaret Brown was "entering" the automobile of her friend, the defendant Kimberly R. Anderson, when she was struck by an uninsured vehicle. If she was, she is entitled to uninsured motorist coverage as an "insured" under the automobile insurance policy issued to Anderson by State Farm Mutual Automobile Insurance Company (State Farm). The trial judge, in a non-jury hearing, held that there was no coverage[1]. He found that Brown was not "entering" the Anderson vehicle at the time of the accident. Therefore, he concluded that State Farm had no obligations to Brown under the uninsured motorist feature of that company's policy. Cumis Insurance Society, Brown's uninsured motorist carrier, appeals the trial court's judgment[2]. It contends that Brown was "entering" and thus "occupying" her friend's vehicle at the time of the collision, and that she was therefore an "insured" under the State Farm policy[3]. We affirm the judgment of the trial court.

The parties submitted this question of coverage to the court on the depositions of Brown and Anderson, the transcript of Brown's interview by a State Farm adjustor, and the State Farm

---

[1]The trial judge found as follows:

> [Brown] was standing next to the door within one or
> two feet it appears to her best judgment. But I think
> under the terms of this particular policy that she had
> not actually at that point in time initiated any sort
> of move to reach for, open and enter into the vehicle
> which appears was still
> . . . locked and had not been opened so that she could
> enter it. And that she was in the course of a
> conversation with Bill Vaughn at the time that she was
> struck and he was struck.

[2]The judgment appealed from was entered pursuant to Tenn. R. Civ. P. 54.02. It is appealable as of right under T.R.A.P. 3(a).

[3]This particular phase of the captioned litigation involves only a dispute between the two insurance companies. If State Farm's policy covers Brown in this accident, the parties acknowledge that its coverage is primary and Cumis is secondary. If not, Cumis is the only uninsured motorist coverage applicable to Brown.

2

and Cumis policies. In effect, the parties stipulated the relevant and pertinent evidence. There are few, if any, disputed material facts. In any event, our review of this appeal is *de novo*. The record comes to us accompanied by a presumption of correctness that carries the day unless the evidence preponderates against the trial court's findings. T.R.A.P. 13(d); however, there is no presumption of correctness as to the trial court's conclusions of law. **Union Carbide Corp. V. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

I

On the evening of October 31, 1992, Anderson drove her State Farm-insured Subaru automobile to Brown's house. There, she picked up Brown and the two went to the VFW in Kingsport to attend a Halloween party. Anderson parked her car on the premises of the VFW, close to the entrance to the club. They arrived at the VFW sometime after 10 p.m.

When the party was over, between 1:00 and 1:30 a.m., Brown and Anderson left the building and walked toward Anderson's car. Anderson opened the trunk, closed it, and then proceeded to the driver's side of the vehicle while Brown went to the passenger's side. Before Anderson could open her door and before Brown had yet put her hand on the car's passenger-side door, the women were approached by two men who engaged them in conversation. The men had also been at the VFW. While the women were standing at the car's doors discussing with the men whether they should all drive to a restaurant for breakfast, a car driven

3

by an uninsured motorist came over onto the VFW's premises, struck the Anderson vehicle, and hit Brown causing her injury. At the time of the accident, Brown was less than five feet from the car's door, and may have been as close as one to two feet.

The pertinent language[4] of State Farm's policy provides as follows:

> **SECTION III UNINSURED MOTOR VEHICLE COVERAGES**
>
> **A.   UNINSURED MOTOR VEHICLE - COVERAGE U (Damages for Bodily Injury Caused by Uninsured Motor Vehicles)**
>
> *   *   *
>
> We will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***uninsured motor vehicle***.  The ***bodily injury*** must be caused by accident arising out of the operation, maintenance or use of an ***uninsured motor vehicle***.
>
> *   *   *
>
> **Who Is an Insured -- Coverage[] U . . .**
>
> ***Insured*** -- means the ***person*** or ***persons*** covered by uninsured motor vehicle coverage. This is:
>
>> 1.   the first ***person*** named in the declarations;
>>
>> *   *   *
>>
>> 4.   any other ***person*** while ***occupying***:
>>
>> a.   ***your car***, . . .

State Farm defines certain words in the policy:

---

[4]The bold and italicized language is as the same appears in the policy.

4

**DEFINED WORDS**
**WHICH ARE USED IN SEVERAL PARTS OF THE POLICY**

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in bold face italics. *You* can pick them out easily.

* * *

*Occupying* -- means in, on, entering or alighting from.


II


In the interpretation of State Farm's policy, we are guided by well-established principles:

> The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g., Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991).

*Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). We approach our task with these principles in mind.


Both of the parties rely upon the cases of *Tata v. Nichols*, *supra*, and *Younger v. Reliance Ins. Co.*, 884 S.W.2d 453

5

(Tenn. App. 1993). It is true that the court in each of those cases dealt with a definition of "occupying" substantially similar to the definition in the case at bar. *Tata* at 650 ("in, upon, getting in, on, out or off" in one policy and "in or upon or entering into or alighting from" in the other); *Younger* at 455 ("in, upon, getting in, on, out or off"). It is also true that in each of these cases, the court had to decide whether the individual hit by an uninsured motorist was "occupying" the insured vehicle at the time of the accident; but that is where the significant similarities end. In the *Tata* case, the Supreme Court was confronted with the following issue:

> . . . whether, for purposes of summary judgment, the plaintiff was *"upon"* either or both vehicles at the time of his injury, and was, therefore, an "insured" within the meaning of the policies.

*Id*. at 650. (Emphasis Added). *Younger* likewise examined the concept of "upon" as found in the definition of "occupancy" in that case. *Younger*, 884 S.W.2d at 455. The instant case does not involve the concept of "upon" as examined in *Tata* and *Younger*. This is clear from the appellant's brief:

> This case involves interpretation of an insurance contract as to whether Brown was *"entering"* and therefore "occupying" the Anderson vehicle when the accident occurred.

(Emphasis Added). Furthermore, the trial court focused on and decided this case on the concept of "entering." Thus, it is clear that the question before us is the meaning of the word

6

"entering" and not the meaning of the word "upon."  As *Tata* points out, since the definition of "occupying" contains a number of words that are separately stated, that definition presumptively addresses different concepts:

> . . . unless "upon" should be considered to have no meaning, it includes some relationship *different from* "in," "getting in," "getting on," "getting out," and "getting off" within the meaning of the Maryland Casualty policy, and "in," "entering into" and "alighting from" in the Allstate policy.

*Id*. at 653.  We believe "entering" is a different concept from "upon" as those words are used in the State Farm policy.  Our focus is on the concept of "entering."

While the analysis[5] utilized by the *Tata* and *Younger* courts is helpful in our review of the facts in the instant case, we do not believe that either case is controlling on us as we attempt to define "entering" and apply that concept to the facts of this case.  In *Tata*, the Supreme Court determined that "[t]he complete meaning of the term 'upon' . . . is uncertain." *Id*. at 651.  It concluded that the word "upon" was one that "require[d] construction." *Id*.  The issue before us is whether the meaning

---

[5]In *Tata*, the Supreme Court had to decide if the plaintiff was "upon" two cars facing each other on the side of the road as he and another tried to "jump-start" one of the cars.  Finding that "upon" was a word of "uncertain" meaning, the court examined the plaintiff's relationship to each of the vehicles, noting his "geographic and spatial proximity to both vehicles" and the fact that he was "directly engaged in activities involving both vehicles." *Tata* 848 S.W.2d 649 at 653.  The court concluded that the plaintiff was "upon" both vehicles.  *Younger* was decided 11 days after *Tata* and employed the same type analysis of the word "upon."  While we do not believe those cases are controlling when the inquiry involves the concept of "entering," we believe the result would be the same in this case if the *Tata*/*Younger* analysis was applicable.

7

of the word "entering" as used in the State Farm policy is likewise uncertain.

We believe the word "entering" has a "common and ordinary meaning," that is clear and unambiguous. The word "enter," as used in the State Farm policy, is defined in **Webster's Encyclopedic Unabridged Dictionary of the English Language**, 476 (1989) as a transitive verb:

> --*v.t.* 5. to come or go into: . . . 6. to penetrate or pierce: . . . 7. to put in or insert

Another dictionary defines the word "enter" as follows:

> --*Transitive*: 1. to come or go into; to pass into the interior of; to pass within the outer cover or shell of; penetrate; pierce; as to *enter* a house; rivers *enter* the sea.

**Webster's New International Dictionary, 2nd ed. Unabridged** 853 (1958). Several courts have held that the meaning of the word "entering" is clear and unambiguous. *See* e.g., *Marcilionis v. Farmers Insurance Company of Oregon*, 318 Or. 640, 871 P.2d 470, 472 (Or. 1994); *Floyd v. J. C. Penney Casualty Insurance Company*, 193 Ga. App. 350, 387 S.E.2d 625, 626 (Ga. App. 1989); *Carter v. Travelers Indemnity Company*, 146 So.2d 257, 259 (La. App. 1962).

As far as we can ascertain, this is the first time that a Tennessee appellate court has been asked to construe and apply the concept of "entering" as found in the definition of

8

"occupying" in the uninsured motorist insurance context. There are, however, cases from other jurisdictions that have examined this particular concept.

In *Marcilionis v. Farmers Insurance Company of Oregon*, *supra*, the Supreme Court of Oregon construed the meaning of the word "occupying" in the context of Oregon's uninsured motorist statutes. One provision of that statutory scheme required that such coverage be afforded to an individual "in or upon or entering into or alighting from" a vehicle. *Id*. 871 P.2d at 472. The court, "[g]iving the words used in the statute . . . their natural, plain, and ordinary meaning," *id*., concluded that an individual is "entering into" an insured vehicle

> when a part of that person makes physical
> contact with the car in a manner that in the
> ordinary course would lead directly to
> entrance or penetration into the car.

*Id*. At 472-73. In the *Marcilionis* case, the plaintiff was driving the insured's car. A woman entered the car unexpectedly, removed the keys, and ran from the car. The plaintiff left the car and gave chase. The woman threw the keys. "[W]hile in the act of picking up the keys," the plaintiff was struck by an uninsured motorist. *Id*. At 471. The Oregon Supreme Court concluded that the plaintiff was not "occupying" the vehicle at the time of the accident.

The same definition of "occupying" was involved in the case of *Allstate Insurance Company v. Horn*, 24 Ill. App. 3d 583,

9

321 N.E.2d 285 (Ill. App. 1974).  In that case, the claimant was attempting to cross six lanes of traffic to reach the insured vehicle after leaving a restaurant.  He was struck by an uninsured car when he was 24 feet from the insured vehicle.  The court in **Allstate Insurance Company** concluded that there was no coverage, observing

> . . . one who is 24 feet from a vehicle is not "entering into" it, and therefore not "occupying" it, within the meaning of the policy.

*Id*. 321 N.E.2d at 291.

In **Carter v. Travelers Indemnity Company**, 146 So.2d 257 (La. App. 1962), the court concluded that the word "entering" as used in a policy definition of "occupying" was "clear and unambiguous."  *Id*. at 259.  In that case, the plaintiff had opened the door of the insured car, and his female companion had entered the car.  The plaintiff also intended to enter the vehicle; but he heard the squeal of brakes, realized that an oncoming car was going to strike the insured vehicle, and tried, unsuccessfully, to pull his companion from the car "in order that they might reach a place of safety."  *Id*. at 258.  A collision ensued and the plaintiff was injured.  The court in **Carter** concluded that the policy afforded coverage to the plaintiff because he was "entering into" the vehicle and hence "occupying" it under the language of the policy.  The court referred to the dictionary and held that "entering" was "an affirmative act or movement to effect an entrance."  *Id*. at 259.  The court rejected

10

the insurer's argument that the plaintiff "had abandoned his intention of entering the vehicle." *Id.* The court opined:

> This contention, in view of the preponderance of the testimony from which we have quoted, is not sustained. The conclusion is inescapable that [the plaintiff] was entering the automobile at the time of the collision; that there had been no abandonment of either his intention or effort to do so.

*Id.* at 259.

In ***McCaslin v. Hartford Accident & Indemnity***, 182 Mich. App. 419, 452 N.W.2d 834 (Mich. App. 1990), the plaintiff stopped at a self-service gasoline station. After he went inside and paid for his gas, he returned outside to get in his vehicle. As he was walking between the rear of his truck and the front of a car that had pulled up behind his vehicle, he was pinned between the bumpers when the other car lurched forward. The court found that the plaintiff was not entitled to benefits under a statute allowing a recovery to one "entering into" the vehicle. The court opined as follows:

> In this case, plaintiff had not crossed the plane or threshold of the truck's door, nor had he even made physical contact with the truck's door when the accident occurred. Given the plain meaning of [the statute], plaintiff is not a person entitled to benefits under the no-fault act as a person "entering into" a parked vehicle.

*Id.* at 835.

11

Language similar to that in the instant case has been construed in still other cases. *Floyd v. J. C. Penney Casualty Insurance Company*, 193 Ga. App. 350, 387 S.E.2d 625 (Ga. App. 1989) ("in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle"); *Testone v. Allstate Insurance Company*, 165 Conn. 126, 328 A.2d 686 (Conn. 1973) ("in or upon or entering into or alighting from"). In *Floyd*, the court held that the plaintiff was not "engaged in the immediate act of entering into" the vehicle when she fell approaching the vehicle, some eight feet away from it. *Id*. 387 S.E.2d at 627. In *Testone*, the Supreme Court of Connecticut held that plaintiff who was "immediately adjacent," *id*. 328 A.2d at 688, to the vehicle intending to enter it when he was struck, was not entering the vehicle and hence not entitled to benefits under the policy of insurance providing coverage for one "entering into" the vehicle. *Id*. at 691. That court held that the "act of approaching [was] not the equivalent of the act of entering." *Id*. As in the instant case, the plaintiff in *Testone* was "two to three feet from the vehicle when it was struck." *Id*.

III

When Brown's status vis-a-vis Anderson's vehicle is analyzed in the context of the clear meaning of the word "entering," we do not believe that she can be said to have been "entering" the vehicle at the time of the accident. The following testimony by Brown is particularly telling:

12

Q. Were you entering the vehicle when the accident occurred?

A. I was going to enter it. Yes, I was going to get in that car.

          \*      \*      \*

Q. And what were you doing when the accident occurred?

A. I was by the car going to get into the car.

Q. All right. Thank you.

A. That was what I was going to do.

Q. All right. That's fine.

A. I hadn't got there yet, but I was going to do that.

Brown told the State Farm adjustor, "I didn't have my hands on the car no."

As other cases have pointed out, there is a difference between intending to enter a vehicle and actually entering it. When Brown and Anderson went inside the VFW, they clearly lost their connection with Anderson's vehicle. Was that connection re-established prior to the accident? We think not. We do not believe that walking toward a vehicle can be construed as "entering" it. We believe that the word "entering" requires more than an intent to enter. In the words of the court in **Carter**, there was no "affirmative act or movement to effect an entrance." 146 So.2d at 259. Here, there was admittedly no contact by Brown with any part of the car at the time of the accident. In fact, at the time of the accident, both Brown's and Anderson's attention had been diverted from the car and toward the two men who had engaged them in conversation.

13

We believe our holding is consistent with the statutory mandate that uninsured motorist coverage must extend to "persons legally entitled to recover damages from an uninsured motorist, if the damages arise 'out of the ownership, maintenance, or use' of the insured car." *Tata* 848 S.W.2d at 654 (quoting from T.C.A. § 56-7-1201(a)). Brown's relationship with the Anderson vehicle at the time of the accident was not such as to bring into play "the ownership, maintenance, or use" of that car.

We cannot say that the evidence preponderates against the trial court's judgment that Brown was not "entering" the Anderson vehicle at the time of the accident.

The judgment of the trial court is affirmed. This cause is remanded to the trial court for the collection of costs assessed there, pursuant to applicable law. Costs on appeal are taxed and assessed to the appellant and its surety.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Don T. McMurray